Steven L. Yarmy, Esq.
Nevada Bar No. 8733
2595 S. Torrey Pines Drive
Las Vegas, NV 89146
(702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com
Attorneys for the Debtors
And Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>NATIVE ENERGY FARMS, LLC,<br><br>Debtors,<br><br>_____ | ) Case No.: 14-13482-ABL<br>)<br>) Chapter 11<br>)<br>) **Hearing Date:** Local Rule 3017<br>) **Hearing Time:** Conditional Approval<br>) **Location:** 300 Las Vegas Blvd South, 3rd<br>) Floor, Las Vegas, Nevada<br>**Judge:** Not Yet Filed |

## DISCLOSURE STATEMENT

## Table of Contents

UNITED STATES BANKRUPTCY COURT ................................................................................1

FOR THE DISTRICT OF NEVADA .........................................................................................1

DISCLOSURE STATEMENT .....................................................................................................1

I. INTRODUCTION ....................................................................................................................4

II. EXPLANATION OF CHAPTER 11 ......................................................................................6

    A. OVERVIEW OF CHAPTER 11 ...........................................................................................6

    B. PLAN OF REORGANIZATION ...........................................................................................6

    C. CONFIRMATION OF A PLAN OF REORGANIZATION ........................................................7

III. DEFINITIONS .......................................................................................................................8

IV. SUMMARY OF THE PLAN AND DISTRIBUTIONS UNDER THE PLAN .....................8

    A. SUMMARY OF THE PLAN ................................................................................................8

    B. DISTRIBUTIONS UNDER THE PLAN ..................................................................................9

V. VOTING INSTRUCTIONS ..................................................................................................10

VI. BACKGROUND & EVENTS PRECIPITATING THE CHAPTER 11 FILING .................10

VII. THE PLAN..........................................................................................................................11

A. TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN ........................................12
   1. ADMINISTRATIVE CLAIMS ..............................................................................12
   2. PROFESSIONAL FEES ......................................................................................12
   3. POST-EFFECTIVE DATE PROFESSIONAL FEES ....................................................12
B. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN .............12
   1. CLASS 1 – CLAIM OF SMI/ISC, INC. ............................................................13
   2. GENERAL UNSECURED CLAIMS .......................................................................14
   3. EQUITY INTEREST OF THE DEBTOR ..................................................................14
   4. DIP LENDER – GOLDEN BEAR CAPITAL ..........................................................15
   A. IMPLEMENTATION OF THE PLAN ......................................................................15

VIII. CONDITIONS PRECEDENT ............................................................................17

A. CONDITIONS TO CONFIRMATION .......................................................................17
B. CONDITIONS TO EFFECTIVENESS ........................................................................17
C. WAIVER OF CONDITIONS ..................................................................................18
D. FAILURE OF CONDITION ...................................................................................18

IX. DISPUTED CLAIMS ..........................................................................................18

A. OBJECTION DEADLINE .....................................................................................18
B. PROSECUTION OF DISPUTED CLAIMS ..................................................................18
C. ENTITLEMENT TO PLAN DISTRIBUTIONS UPON ALLOWANCE ..................................18

X. EFFECT OF CONFIRMATION ............................................................................18

A. REVESTING OF ASSETS .....................................................................................18
B. DISCHARGE ...................................................................................................19

XI. JURISDICTION ................................................................................................19

XII. AMENDMENT AND WITHDRAWAL OF PLAN ................................................19

A. AMENDMENT OF THE PLAN ..............................................................................19
B. REVOCATION OR WITHDRAWAL OF THE PLAN .....................................................19

XIII. TAX CONSEQUENCES OF THE PLAN ...........................................................20

XIV. RISK FACTORS ............................................................................................20

XV. LIQUIDATION ANALYSIS ...............................................................................20

XVI. ACCEPTANCE AND CONFIRMATION OF THE PLAN ...................................21

A. ACCEPTANCE OF THE PLAN ..............................................................................21
B. CONFIRMATION ..............................................................................................21

XVII. MISCELLANEOUS PROVISIONS ..................................................................23

A. FILING OBJECTIONS TO CLAIMS ........................................................................23
B. HOLDING OF, AND FAILURE TO CLAIM, UNDELIVERABLE DISTRIBUTIONS ...............23
C. FRACTIONAL AMOUNTS ...................................................................................23
D. EX PARTE RELIEF ...........................................................................................23
E. BINDING EFFECT ............................................................................................23
F. EXCULPATION ................................................................................................23
G. GOVERNING LAW ...........................................................................................24
H. MODIFICATION OF PAYMENT TERMS ..................................................................24

I. UNITED STATES TRUSTEE FEES ........................................................................................... 24

J. COMPUTATION OF TIME ................................................................................................... 24

K. FINAL DECREE ................................................................................................................ 24

**XVIII. RECOMMENDATION AND CONCLUSION** ......................................................................**24**

# I. INTRODUCTION

This Disclosure Statement (the "Disclosure Statement") has been prepared by the above-captioned debtor (the "Debtor"), in connection with the solicitation of acceptances of the Debtor's Plan of Reorganization Dated March 7, 2014 (the "Plan"). The purpose of this Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor, typical of holders of Claims and equity interests, to make an informed judgment about the Plan. An acceptance or rejection of the Plan must be in writing and may only be made by completing the ballot that accompanies the Plan.

In order for your vote to be counted, it must be received no later than 5:00 p.m. (prevailing Pacific Time) on April 30, 2014 at the following address:

Steven L. Yarmy, Esq.
Nevada Bar No. 8733
2595 S. Torrey Pines Drive
Las Vegas, NV 89146

The Debtor reserves the right, but not the obligation, to extend the voting deadline and to count any votes received thereafter.

This Disclosure Statement includes (among other things), a summary of the Chapter 11 Case, a description of the Claims against and equity interests in the Debtor, a summary of the Plan, a discussion of the Plan's feasibility, and a liquidation analysis setting forth what holders of a Claim against or equity interest in the Debtor would recover if the Debtor was liquidated immediately under Chapter 7 of the Bankruptcy Code.

UPON BANKRUPTCY COURT APPROVAL OF THE PLAN, THE PLAN WILL BE BINDING UPON ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS.

The Debtor requests that you vote promptly for the Plan upon carefully reviewing the Plan.

If you have any questions concerning the procedures for voting, or any questions concerning your treatment under the Plan, please contact Debtor's counsel at (702) 586-3513.

THE PLAN IS THE GOVERNING DOCUMENT. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN CONTROL.

THE FINANCIAL PROJECTIONS CONTAINED IN THIS DISCLOSURE STATEMENT REPRESENT THE DEBTOR'S ESTIMATES OF FUTURE EVENTS BASED ON CERTAIN ASSUMPTIONS MORE FULLY DESCRIBED BELOW, SOME OR ALL OF WHICH MAY NOT BE REALIZED. THE FINANCIAL INFORMATION IS UNAUDITED. NONE OF THE FINANCIAL ANALYSIS CONTAINED IN THIS DISCLOSURE STATEMENT IS CONSIDERED TO BE A "FORECAST" OR "PROJECTION" AS TECHNICALLY DEFINED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THE USE OF THE WORDS "FORECAST," "PROJECT," OR "PROJECTION" WITHIN THE DISCLOSURE

STATEMENT RELATES TO THE BROAD EXPECTATIONS OF FUTURE EVENTS OR MARKET CONDITIONS AND QUANTIFICATIONS OF THE POTENTIAL RESULTS UNDER THOSE CONDITIONS.

THE PROFESSIONALS REPRESENTING THE DEBTOR HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTOR IN CONNECTION WITH THE PREPARATION OF THIS DISCLOSURE STATEMENT AND HAVE NOT INDEPENDENTLY VERIFIED ALL OF THE INFORMATION CONTAINED HEREIN. THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS, OR TAX ADVICE. YOU SHOULD CONSULT WITH YOUR OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX, AND RELATED MATTERS CONCERNING YOUR CLAIM OR INTEREST.

EACH CREDITOR AND EQUITY INTEREST HOLDER IS URGED TO REVIEW THE PLAN IN FULL BEFORE VOTING ON THE PLAN TO ENSURE A COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS AND OTHER PARTIES IN INTEREST AND FOR THE SOLE PURPOSE OF ASSISTING THEM IN MAKING AN INFORMED DECISION ABOUT THE PLAN. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS IN CONJUNCTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT OR IN THE BALLOTS. IF GIVEN OR MADE, ANY SUCH INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.

Attached as Exhibits to this Disclosure Statement are copies of the following documents:

- **Exhibit A -- Liquidation Analysis**
- **Exhibit B -- Financial Projections and Distributions**

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying claims against and interests in the debtor. In this case, the Debtor is soliciting its Plan prior to commencing its bankruptcy proceeding. In such a case, section 1125 of the Bankruptcy Code requires that a debtor comply with applicable non-bankruptcy law in connection with its solicitation of the Plan. If no applicable non-bankruptcy law exists, section 1126(b) provides that a solicitation must comply with the disclosure requirements set forth in section 1125 of the Bankruptcy Code concerning disclosure statements. The Debtor does not believe that there is an applicable non-bankruptcy law governing the solicitation of this Plan. Accordingly, this Disclosure Statement is presented to holders of Claims against the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the Debtor's solicitation of votes on the Plan. In short, the Debtor believes that this Disclosure Statement provides information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical investor to make an informed judgment about the Plan.

Debtor expects to file the Plan concurrently with the commencement of its bankruptcy case and your vote on the Plan will be binding, even after the Debtor's bankruptcy case has been commenced.

## II. EXPLANATION OF CHAPTER 11

### A. Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11, a debtor in possession attempts to reorganize its business for the benefit of the debtor, its creditors and other parties in interest. The Debtor has not yet commenced bankruptcy proceedings. However, the Debtor expects to file a "prepackaged" bankruptcy after the solicitation of votes on the Plan is completed if all of the Classes of creditors set forth below approve the Plan.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee. Here, the Debtor fully expects to remain in possession of its assets throughout its Chapter 11 Case.

The filing of a chapter 11 petition triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, among other things, for an automatic stay of all attempts to collect or recover prepetition claims from the debtor or to otherwise interfere with, or exercise control over, the debtor's property or business. Except as otherwise ordered by the Bankruptcy Court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

After a chapter 11 plan has been filed, holders of certain claims against and equity interests in a debtor are permitted to vote to accept or reject such plan. In a typical Chapter 11 Case and before soliciting acceptances of the proposed plan a debtor is required under section 1125 of the Bankruptcy Code to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan.

The Proponents are submitting this Disclosure Statement to holders of Claims against the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code. This Disclosure Statement sets forth specific information regarding the pre-bankruptcy history of the Debtor, and the anticipated organizational and capital structure and operations of the Reorganized Debtor after confirmation of the Plan and emergence from chapter 11. This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, certain risk factors associated with the debt and equity securities that will be issued to holders of certain Classes of Claims, and the manner in which distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims entitled to vote must follow in order for their votes to be counted.

### B. Plan of Reorganization

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying claims against and interests in the debtor. In this case, the Debtor is soliciting its Plan prior to commencing its bankruptcy proceeding. In such a case, section 1125 of the Bankruptcy Code requires that a debtor comply with applicable non-bankruptcy law in connection with its solicitation of the Plan. If no applicable non-bankruptcy law exists, section 1126(b) provides that a solicitation must comply with the disclosure requirements set forth in section 1125 of the Bankruptcy Code concerning disclosure statements. The Debtor does not believe that there is an applicable non-bankruptcy law governing the solicitation of this Plan. Accordingly, this Disclosure Statement is presented to holders of Claims against the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the Debtor's solicitation of votes on the Plan. In short, the Debtor believes that this Disclosure Statement provides information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical investor to make an informed judgment about the Plan.

The Debtor expects to file the Plan concurrently with the commencement of its bankruptcy case and your vote on the Plan will be binding, even after the Debtor's bankruptcy case has been commenced.

### C. Confirmation of a Plan of Reorganization

If all classes of claims and interests accept a plan of reorganization, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129 of the Bankruptcy Code have been satisfied. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests" of creditors test and be "feasible." The "best interests" test generally requires that the value of the consideration to be distributed under a plan to the holders of claims or interests in the debtor is not less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization. With the exception of approval of the Plan by all impaired classes, the Debtor believes that the Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the best interests of creditors test and the feasibility requirement.

Chapter 11 does not require that each holder of a claim or interest in a particular class vote in favor of a plan of reorganization in order for the bankruptcy court to determine that the class has accepted the plan. Rather, a particular class will be determined to have accepted the plan if the court determines that the plan has been accepted by a majority in number and two-thirds in amount of those claims actually voting in such class. **Importantly, only the holders of Claims who actually vote will be counted as either accepting or rejecting the Plan.**

In addition, classes of claims or interests in the debtor that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Conversely, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights associated with the claims or equity interests of that class are modified

in any way under the plan. Modification for purposes of determining impairment, however, does not include curing defaults and reinstating maturity or payment in full in cash on the effective date of the plan.

The bankruptcy court may also confirm a plan of reorganization even though fewer than all classes of impaired claims and equity interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or equity interests, the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, in an amount equal to the allowed amount of such claim or such other treatment as accepted by the holder of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interests in such class. **The Debtor believes that the Plan has been structured so that it will satisfy the foregoing requirements as to any rejecting Class of equity interests, and can therefore be confirmed, if necessary, over the objection of such of Class. The Debtor will not attempt to confirm the Plan over the non-acceptance of any creditor Class.**

## III. DEFINITIONS

All capitalized terms used herein, but not defined herein shall have the meaning given to such terms in the Plan. If a term is not defined herein or in the Plan, but is defined in the Bankruptcy Code, such term has the meaning given to that term in the Bankruptcy Code unless the context of the Disclosure Statement requires otherwise. References to a code section are references to the Bankruptcy Code, except as otherwise stated.

## IV. SUMMARY OF THE PLAN AND DISTRIBUTIONS UNDER THE PLAN

This Section provides a summary of the Plan and of how Claims against and equity interests in the Debtor are classified and treated under the Plan. The descriptions set forth below are merely summaries and, in the event of an inconsistency with the Plan, the terms of the Plan will govern. Please refer to Section VII hereof for a more detailed discussion of the Plan.

### A. Summary of the Plan

The Plan is not complicated. The Debtor is the owner of certain real property totaling 76.88 acres located in Goleta, California along the Pacific Coast Highway (the "Property"). The Property is free and clear of liens and encumbrances and has a current market value of $8-11 million. On April

13, 2013, the Debtor borrowed $1,100,000.00 from SMI/ISC, Inc., as an unsecured promissory note. The Debtor defaulted under the terms of the Note on November 1, 2013. SMI/ISC, Inc., the Debtor's single largest creditor threatened to bring suit and attach its judgment to the Property and conduct a sheriff's sale. The Debtor and SMI/ISC have come to an agreement wherein, the Debtor would file a pre-packaged plan and SMI/ISC would take a subordinate position to a DIP lender and be repaid in full and receive 20% of the profit when the parcel of land and/or lots sold. Prior to these negotiations, the Debtor was actively pursuing a hard money loan and there are very few lenders loaning against unimproved land within the California Coastal Commission zoning area because of various restrictions and the slow process to gain permits. The Planning process alone, to get the parcel split and build takes approximately 18-24 months.

The Debtor is in need of a priming lien under 11 U.S.C. § 364(d)(1) in order to split the parcel into two lots of approximately 38 acres each in order to build two homes with outbuildings. The priming lien will serve as collateral for the promissory note (the "Note") in the amount of $2,000,000 or more from Golden Bear Capital or a substitute lender (the "DIP Lender"). The Lender requires a priming lien because the lender wants added security in making an additional loan to the Debtor.

Under the Plan, SMI/ISC will have a recorded second deed of trust to secure its unsecured promissory note. After the priming lien is satisfied, SMI/ISC's second deed of trust will be paid, then SMI/ISC will receive the first 20% of any profits on the sale of the property. The purpose of the Plan is to effectively transfer an unsecured claim to a secured claim and borrow additional capital without the necessity and expense of a foreclosure as well as to provide a structure and mechanism to protect and improve and fully realize the value of the Property for the Lenders.

The Plan is the result of arms' length negotiations between the Debtor, SMI/ISC, and Golden Bear Capital, which balances the interests of all parties. Under the Plan, the Lenders will receive the large bulk of distributions from the sale of the Property within a 3 year time limitation. If the property is not sold, the property would revert to the Lenders' in three years and the Debtor agrees not to file any additional actions, such as bankruptcy. If the Property can be successfully developed and sold, the Lenders benefit and the Debtor will realize a substantial gain in profit.

The alternative to the Plan is for the SMI/ISC to bring suit against NEF and then NEF would file for chapter 11 protection in the normal course, which would drag out the reorganization process and increase the costs and expenses of all parties. Further, the SMI/ISC will not have the benefit of the NEF's Manager's and real estate expertise. Under these circumstances, the Debtor believes that the Plan is in the best interest of the it's Creditors' and urges you to vote for the Plan

**B. Distributions under the Plan**

The following is a summary of the Distributions under the Plan. Claims (except Administrative Claims and Claims of Professionals) against and equity interests in the Debtor will receive Distributions under the Plan as set forth below:

| Class | Claim | Claim Amount | Projected Recovery Under the Plan | Status | Voting Rights |
|---|---|---|---|---|---|
| 1 | SMI/ISC, Inc. | $1,298,000.00 | 100% | Impaired | Entitled to Vote |
| 2 | General Unsecured Claims | $30,000.00 | 100% | Impaired | Entitled to Vote |

| 3 | Equity Interest | $7,000,000.00 | 100% | Unimpaired | Deemed to Accept |
|---|----------------|---------------|------|------------|------------------|
| 4 | Golden Bear Capital or a Substitute § 364(d)(1) DIP Lender | $1,500,000.00 | 100% | Unimpaired | Deemed to Accept |

## V. VOTING INSTRUCTIONS

IT IS IMPORTANT THAT YOU EXERCISE YOUR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN. If you are or may be entitled to vote on the Plan, you have been sent a ballot (the "Ballot") and instructions for voting with this Disclosure Statement. You should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot sent to you with this Disclosure Statement.

To simplify the voting procedure, Ballots have been sent only to all known holders of Claims and equity interests, including Disputed Claims to which objections may be filed once the Chapter 11 Case has been commenced. The Bankruptcy Code and the Bankruptcy Rules provide that only the holders of Allowed Claims (or Claims which are deemed Allowed) and holders of Allowed equity interests are entitled to vote on the Plan. The Bankruptcy Court may temporarily allow a Disputed Claim to which an objection has been filed for purposes of voting on the Plan. Therefore, although the holders of Disputed Claims to which an objection has been filed will receive Ballots, these votes will not be counted unless the Bankruptcy Court temporarily allows such Claims for purposes of voting on the Plan.

If a party in interest is a member of more than one Class, it will receive a Ballot for each Class. IF YOU ARE A MEMBER OF MORE THAN ONE CLASS, YOU MUST FILL OUT AND RETURN ALL BALLOTS SENT TO YOU FOR YOUR VOTE TO COUNT IN EACH CLASS.

**AN ACCEPTANCE OR REJECTION OF THE PLAN MAY BE VOTED BY COMPLETING THE BALLOT THAT ACCOMPANIES THE PLAN AND THE DISCLOSURE STATEMENT, AND RETURNING IT NO LATER THAN 5:00 P.M. (PREVAILING PACIFIC TIME) ON APRIL 30, 2014 TO:**

Steven L. Yarmy, Esq.
Nevada Bar No. 8733
2595 S. Torrey Pines Drive
Las Vegas, NV 89146

**IF YOUR BALLOT IS NOT RETURNED BY SUCH TIME, IT MAY NOT BE CONSIDERED. BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED OR WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

## VI. BACKGROUND & EVENTS PRECIPITATING THE CHAPTER 11 FILING

The Debtor's only asset is Vacant Land in Goleta, California, which is a 76.88 acres single parcel with Pacific Ocean views and beach access known as APN: 081-140-23-00. The Property was originally held in trust by the Coastal Band of Chumash Nation, a California Non Profit Corporation for Kote Lotah and then transferred to the Southern Chumash Owl Clan, a California Unincorporated Association, its President is Kote Lotah. The Debtor and the Southern Chumash Owl Clan through its

- 10 -

President, Kote Lotah entered into a Joint Venture Agreement/Operating Agreement wherein the Southern Chumash Owl Clan would retain 51% interest in the Property and the Debtor would retain 49% interest in the Property. The Debtor under the Agreement is to develop the Property and split the Profits 51/49 when the Property sells. Initially, the loan from SMI/ISC was utilized for feasibility studies for the possibility of constructing an ethanol plant using molasses as its feed stock. The ethanol venture did not pan out. The Debtor then changed course and decided to develop the property as two small ranches as its highest and best use.

The Debtor is the owner of certain real property totaling 76.66 acres located in Goleta, California along the Pacific Coast Highway (the "Property"). The Property is free and clear of liens and encumbrances and has a current market value of $8-11 million, when developed. The valuation is determined by recent sales of similar property with a small ranch style home.

On April 13, 2013, the Debtor borrowed $1,100,000.00 from SMI/ISC, Inc., as an unsecured promissory note. Because finding a development loan took so long SMI/ISC lost trust in the Debtor's management and was getting impatient because there appeared to be little progress on the Property. However, the Debtor has spent the funds from SMI/ISC on consultant's appraisers, and contractors to improve the existing well and electrical, and the grading of a road and general clearing as well as operating capital.

The Debtor defaulted under the terms of the Note on November 1, 2013. SMI/ISC, Inc., the Debtor's single largest creditor threatened to bring suit and attach its judgment to the Property and conduct a sheriff's sale unless an amicable resolution was thought out. The Debtor and SMI/ISC have come to an agreement wherein, the Debtor would file a pre-packaged plan and SMI/ISC would take a subordinate position to the DIP lender and be repaid it's funds lent and receive 20% of the profit when the parcel and/or lots sell. Prior to these negotiations, the Debtor was actively pursuing a hard money loan and there are very few lenders loaning against unimproved land within the California Coastal Commission zoning area because of various restrictions and the slow process to gain permits. The Planning process alone, to get the parcel split and build takes approximately 18-24 months.

The Debtor is in need of a priming lien under 11 U.S.C. § 364(d)(1) in order to split the parcel into two lots of 38 acres each and build two homes with outbuildings. The priming lien will serve as collateral for the promissory note (the "Note") in the amount of $2,000,000 or more from Golden Bear Capital or a substitute lender (the "DIP Lender"). The DIP Lender requires a priming lien because the lender wants added security in making an additional loan to the Debtor.

Under these circumstances, the Debtor believes that the Plan is in the best interest of it's Creditors' and urges you to vote for the Plan

## VII. THE PLAN

A copy of the Plan accompanies this Disclosure Statement as Exhibit A. The following summary of the material provisions of the Plan is qualified in its entirety by the specific provisions of the Plan, including the Plan's definitions of certain terms used below. The following is intended only to provide a general description of the Plan. For more specific information concerning the Plan, the Plan should be referenced. For an overview of the Plan, please refer to Section IV above.

**A. Treatment of Unclassified Claims Under the Plan**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including, without limitation, Claims for Professional Fees, are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims are instead treated separately in accordance with Article 2 of the Plan and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

**1. Administrative Claims**

Administrative Claims other than Claims for Professional Fees shall be paid in full in Cash by the reorganized Debtor on the Effective Date, except as otherwise permitted by the Bankruptcy Code or as otherwise agreed by the reorganized Debtor and the holders of any such Administrative Claims. All requests for payment of Administrative Claims, other than requests for payment of Claims for Professional Fees, must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor or the reorganized Debtor.

**2. Professional Fees**

Each Person seeking an award by the Bankruptcy Court of Professional Fees, except Debtor's counsel: (a) must file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days of the Effective Date; and (b) if the Bankruptcy Court grants such an award, it must be paid in full in Cash by the Debtor with funds contributed by the Parent in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable. All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the requirements of the Bankruptcy Code, the Bankruptcy Rules and any applicable guidelines and with all of the terms and conditions set forth in any applicable order of the Bankruptcy Court, including, without limitation, the Confirmation Order, and all other orders governing payment of Professional Fees. The Debtor will have outstanding post-petition attorney's fees owed to Debtor's counsel in the amount of $25,000.00 plus costs of $1,213.00 based upon the Debtor's fixed fee agreement with debtor's counsel. These fees will be satisfied from the new DIP Loan.

**3. Post-Effective Date Professional Fees**

All Professional Fees for services rendered in connection with the Chapter 11 Case and the Plan after the Effective Date are to be paid by the reorganized Debtor upon receipt of an invoice for such services, or such other terms to which the reorganized Debtor and the relevant Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

**B. Summary of Classification and Treatment of Claims Under the Plan**

In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Section VII(A) above) and holders of equity interests

are placed in the Classes described below for all purposes, including, without limitation, voting on, Confirmation of, and Distribution under, the Plan:

| Class | Claim | Claim Amount | Status | Voting Rights |
|-------|-------|-------------|--------|---------------|
| 1 | SMI/ISC, Inc. | $1,298,000.00 | Impaired | Entitled to Vote |
| 2 | General Unsecured Claims | $30,000.00 | Impaired | Entitled to Vote |
| 3 | Equity Interest | $7,000,000.00 | Unimpaired | Deemed to Accept |
| 4 | Golden Bear Capital 364(d)(1) DIP Loan | $1,500,000.00 | Unimpaired | Deemed to Accept |

The treatment of Claims against and equity interests in the Debtor under the Plan is set forth below and is consistent with the requirements of Section 1129(a) of the Bankruptcy Code:

**1. Class 1 – Claim of SMI/ISC, Inc.**

This Class 1 claim will consist of a Secured Claim in favor of SMI/ISC, Inc. against the Debtor's Vacant Land located in Goleta, California more commonly known as APN: 081-140-023, which will be secured by a Second Deed of Trust.

(a) On the Effective Date, the holder of the unsecured Note dated April 13, 2013 in favor of SMI/ISC, Inc., and in complete satisfaction of such claim shall be fully released and converted to a secured claim and subordinated second deed of trust to the Claim of the DIP Lender Golden Bear Capital:

(b) *Principal Balance*. The principal balance of the Class 1 claim shall be the Allowed Secured Lender Claim in the amount of $1,298,000.00.

(c*) Lien.* From and after the Confirmation Date, the Holder of the Class 1 Claim shall be allowed to record a second deed of trust in the Collateral consistent with the applicable Loan Documents until the Class 1 claim is repaid in full.

(d) *Post-Effective Date Interest Rate.* Interest shall accrue on the Class 1 Holders Claim at an interest only rate of 3.00% per annum.

(e) *Monthly Payments*.

(i) There shall be no monthly payments, payments shall accrue until paid.

(f) *Maturity Date.* The unpaid balance of the Class 1 claim shall be due and payable 36 months after the Effective Date.

(g) *Prepayment*. There shall be no penalty for prepayment for all or part of the Class 1 claim prior to the Maturity Date.

(h) *Property Taxes & Insurance*. The Debtor shall be responsible for all property taxes and general liability insurance.

(i) *Refinancing and Sale Options*. Prior to the Maturity Date, Reorganized Debtor shall have the absolute right to act as follows:

(i) Refinance; provided, however, that the proceeds of such refinancing loan are sufficient to pay, and are utilized to pay, all sums due and owing under the Class 1 claim at the time of closing of such refinancing, unless Secured Lender otherwise agrees; or

(ii) Sell the Real Property free and clear of Secured Lender's Liens; provided, however, that the proceeds of such sale are sufficient at the time of closing of such sale to pay, and are utilized to pay, all sums due and owing under the Class 1 claim, unless Secured Lender otherwise agrees.

(j) *Equity Share in Sales Profits*. SMI/ISC shall be entitled to twenty percent (20%) of the sales profits from the sale of the property after all liens and expenses are deducted.

(k) *Default*. On the Effective Date, the Loan Documents shall remain in full force and effect as related to Default terms under the Note and Deed of Trust. Should the Debtor not be able to satisfy the above obligation to SMI/ISC the Debtor shall provide and SMI/ISC shall accept a Deed in Lieu of Foreclosure or Quiet Claim/Grant Deed in full satisfaction of its obligations to SMI/ISC.

**Impairment and Voting:** Class 1 is impaired. Holders of the Class 1 claim are entitled to vote to accept or reject this Plan.

**2. General Unsecured Claims**

Class 2 Claims consist of the General Unsecured Claims against the Debtor of Global Guidance Group, LLC.

(a) *Treatment:* Holders of Class 2 General Unsecured Claims on the Effective Date shall, in full satisfaction, settlement, release and exchange for such Allowed General Unsecured Claims, shall receive two payments. The first payment shall come from the DIP Loan Proceeds equal to $22,500.00. The remaining $7,500.00 shall be paid when the property sells, with interest to accrue at a rate of ten percent per annum compounding.

**Impairment and Voting:** Class 2 is impaired. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject this Plan.

**3. Equity Interest of the Debtor**

Class 3 consist of the Equity Interest of the Debtor.

(a) *Treatment.* The Equity Interest of the Debtor are unimpaired by the Plan and conclusively deemed to have accepted the Plan, pursuant to Bankruptcy Code section 1126(f). No solicitation is required.

**Impairment and Voting:** Class 3 is not unimpaired by the Plan, the Holders of Allowed General Unsecured Claims are conclusively deemed to have accepted the Plan, pursuant to

Bankruptcy Code section 1126(f). No solicitation is required.

### 4. DIP Lender – Golden Bear Capital and/or its assigns or a substitute lender

Class 4 consist of Golden Bear Capital's and/or its assigns or a substitute lender § 364(d)(1) super priority first deed of trust.

(a) Treatment. Upon Plan Confirmation Golden Bear Capital and/or its successors or assigns or a replacement lender shall be authorized to lend the Debtor any amount of capital and receive a first super priority deed of trust against the vacant land more fully described in <u>Exhibit A</u> of the Plan.

### A. Implementation of the Plan

The following section describes the means for implementing the Plan.

1. **Management.** On and after the Effective Date, the Debtor shall be managed as provided in the existing Operating Agreement. Further, without limiting the generality of the foregoing, the Manager shall be entitled to receive the Management Fee and all other compensation and reimbursements described in the Operating Agreement. The entry of the Confirmation Order shall ratify and approve all actions taken by the Debtor prior to the date thereof.

2. **Adoption of Operating Agreement.** On and after the Effective Date, and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall be governed by the Existing Operating Agreement and such agreement shall be the operating agreement in respect of the Debtor.

3. **Certain Tax Provisions.** Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer as part of a transaction authorized by the Plan, including, without limitation, any transfers of Property shall not be taxed under any law imposing a stamp tax or similar tax.

4. **Post-confirmation matters.** On and after the Effective Date, without need for further action by the members or managers of the Debtor, and without further order of the Bankruptcy Court, the Debtor shall be appointed estate representative under section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to: (a) make all Distributions required to be made on or after the Effective Date to the holders of Allowed Claims, including Distributions of Sales Profits; (b) settle, resolve and object to Claims; (c) retain, employ and utilize such Professionals as may be necessary without further approval of the Bankruptcy Court; and (d) do all things necessary and appropriate to fulfill the duties and obligations of the Debtor under the Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules. The Debtor, in its capacity as estate representative, shall comply with all withholding and reporting requirements imposed upon it by any Governmental Unit under applicable law and all Distributions shall be subject to such withholding and reporting requirements, if any.

On and after the Effective Date, and without further order of the Bankruptcy Court, the

Parent shall be appointed estate representative under section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to: (a) pay all fees payable under 28 U.S.C. § 1930; (b) file any post-Confirmation reports required by the Bankruptcy Code or the Bankruptcy Court and (c) move for the entry of a Final Decree and prepare and file any pleadings as may be required by the Bankruptcy Court in connection with the Final Decree and the closing of the Chapter 11 Case.

5. **Corporate Authority.** The entry of the Confirmation Order shall constitute authorization for the Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and consummate, the Plan, and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule, or regulation, including, without limitation, any action required by holders of Old Membership Units, including, among other things, the issuance of Class A Membership Interests and Class B Membership Interests, and the adoption of the New Operating Agreement under the Plan.

6. **Release of Claims by Releasing Lenders.** On the Effective Date, each of the Lenders voting in favor of the Plan (each a "Releasing Lender") and SMI/ISC, on behalf of itself and each of its agents, successors, assigns and representatives of any kind (collectively, the "Releasing Lender Parties"), shall and hereby does voluntarily forever release and discharge the Debtor, any other obligors under the Note, the Guarantor, any obligors under any other guarantees of the Note (if any) and each of such Person's respective agents, successors, assigns and representatives of any kind (collectively, the "Debtor Parties") from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Effective Date arising out of or in any way related to the Note, the Guarantee, any other guarantees of the Note or the Property; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise.

Lenders that do not vote, or vote against the Plan shall not be considered Releasing Lenders under the Plan; however, the Debtor and the Guarantors reserve all of their rights under the Nevada Statute.

7. **Release of Claims by Debtor Parties.** On the Effective Date, each Debtor Party hereby forever releases and discharges each Releasing Lender Party from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Effective Date arising out of or in any way related to the Note, the Guarantee, any other guarantees of the Note (if any) or the Property; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise.

8. **Avoidance Actions.** The Debtor does not believe that the estate has any viable avoidance actions and, therefore, does not intend to pursue any such actions after the Effective Date.

## VIII. CONDITIONS PRECEDENT

### A. Conditions to Confirmation

It is a condition precedent to Confirmation that the Bankruptcy Court enters a Confirmation Order in form and substance reasonably acceptable to the Debtor and SMI/ISC and Golden Bear Capital and/or its assigns or a replacement lender, which shall include a provision that the Real Property shall be held by the Debtor on the Effective Date free and clear of Liens, Claims or interest other than those Liens and Interest as provided for in the Plan.

### B. Conditions to Effectiveness

The following are conditions precedent to the occurrence of the Effective Date:

(a)    the Confirmation Date shall have occurred;

(b)    the Confirmation Order shall have been entered and shall be a Final Order;

(c)    no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, remain pending;

(d)    the Debtor shall have received all approvals necessary or appropriate to substantially consummate the Plan; and

(e)     each and every Plan Document shall be fully executed and in form and substance reasonably satisfactory to the Debtor and SMI/ISC and Golden Bear Capital.

### C. Waiver of Conditions

Conditions to Confirmation and the occurrence of the Effective Date may be waived, in whole or in part, by the Debtor at any time with the consent of Clayton or an order of the Bankruptcy Code.

### D. Failure of Condition

If the Effective Date shall not occur, the Debtor and all other parties in interest shall retain all their rights and remedies as if the Plan had not been proposed. Among other things, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver of any Claims against or equity interests in the Debtor or (b) prejudice in any manner the rights of the Debtor or the Lenders.

## IX. DISPUTED CLAIMS

### A. Objection Deadline

Any objections to Administrative Claims and all other Claims made after the Effective Date shall be filed and served on the holders of such Administrative Claims and Claims not later than sixty (60) days after the Effective Date or such later date as may be approved by the Bankruptcy Court via ex parte request.

### B. Prosecution of Disputed Claims

The Debtor, as estate representative, may object to the allowance of Claims and Administrative Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with the Plan.

### C. Entitlement to Plan Distributions upon Allowance

Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

## X. EFFECT OF CONFIRMATION

### A. Revesting of Assets

Subject to the provisions of the Plan and the Confirmation Order, the property of the Estate, including, without limitation, the Property commonly known as APN: 081-140-023, shall vest in the Debtor on the Effective Date. As of the Effective Date, all such property, including, without limitation, the Property, shall be free and clear of all Claims, Liens and equity interests, including, without limitation, any claims arising from the Unsecured Note, any other Liens or interest to the

fullest extent permitted by section 1141(c) of the Bankruptcy Code. From and after the Effective Date, the Debtor shall be free of any restriction imposed by the Bankruptcy Court, the Bankruptcy Code and the Bankruptcy Rules, other than the obligations set forth in the Plan, or the Confirmation Order.

### B. Discharge

Except as provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and equity interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims. Except as provided in the Plan or the Confirmation Order, Confirmation discharges the Debtor and the reorganized Debtor from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted the Plan.

## XI. JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and as more particularly set forth in the Plan, the Bankruptcy Court shall retain and have all authority and jurisdiction as is allowed under the Bankruptcy Code and other applicable law to enforce the provisions, purposes, and intent of the Plan; provided, that nothing in the Plan or the Confirmation Order shall provide the Bankruptcy Court with any jurisdiction to determine the rights of the Debtor, the Guarantor or any of the Lenders under or in connection with the Nevada Statute.

## XII. AMENDMENT AND WITHDRAWAL OF PLAN

### A. Amendment of the Plan

At any time before the Confirmation Date, the Debtor may alter, amend, or modify the Plan under section 1127(a) of the Bankruptcy Code; provided that the Debtor may not materially modify the treatment of any Class that has accepted the Plan without the consent of such Class. After the Confirmation Date and before substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission in, or reconcile any inconsistencies in the Plan or the Confirmation Order, and to implement such action as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan; provided, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

### B. Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan at any time and for any reason before the Confirmation Date. Without limiting the generality of the foregoing, the Debtor may withdraw the Plan in the event that any Class does not accept the Plan or if there is substantial opposition to the Plan from any Lender notwithstanding such acceptance. If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan or any Plan

Documents shall be deemed a waiver of any Claims by or against the Debtor or any other Person in any further proceedings involving the Debtor.

## XIII. TAX CONSEQUENCES OF THE PLAN

THE PLAN MAY HAVE SIGNIFICANT TAX CONSEQUENCES FOR ALL CREDITORS AND EQUITY HOLDERS OF THE DEBTOR. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

THE DEBTOR AND THE REORGANIZED DEBTOR MAY WITHHOLD ALL AMOUNTS REQUIRED BY LAW TO BE WITHHELD FROM PAYMENTS TO HOLDERS OF ALLOWED CLAIMS.

## XIV. RISK FACTORS

The restructuring of the Debtor contemplated by the Plan involves a degree of risk, and this Disclosure Statement contains forward-looking statements that involve risks and uncertainty. The Debtor's actual results could differ materially from those anticipated in such forward-looking statements as a result of a variety of factors, including those set forth in the following risk factors and elsewhere in this Disclosure Statement. **Holders of Claims and equity interests should consider carefully the following factors, in addition to the other information contained in this Disclosure Statement, before submitting a vote to accept or reject the Plan. The below risk factors should not be regarded as constituting the only risks involved in connection with the Plan and its implementation.**

The Plan contains several material risks, including, without limitation:

There is no guarantee that liquidity in the real estate market in Santa Barbara County will improve in the future. As a result, the Property may lose value after the Effective Date, impairing the value of the Equity Interests, to the Lenders under the Plan and Sales Profits.

Although the Debtor believes that it can weather the downturn in the real estate market, such an outcome is not guaranteed. If the Debtor fails, it will not be able to effectively market the Property and the Property could lose value.

Under the Plan, the Debtor's Members are prepared to pay the cost of the plan process only so long as such cost is reasonable. If there are lengthy objections to the Plan, such parties may refuse to continue to fund the Debtor. In such a case, the Plan will likely be withdrawn and the Debtor's bankruptcy case may be converted to chapter 7. In such event, the Plan will not be confirmed and the Lenders will lose the benefit of the Plan.

## XV. LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code requires that a holder of a Claim in an impaired Class receive or retain under the Plan not less than the holder would receive or retain on account of the

Claim if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. This test is often referred to as the "best interest of creditors" test.

To apply the "best interests" test, the Bankruptcy Court must first calculate the aggregate dollar amount that would be generated from a liquidation of the Debtor's assets in a hypothetical liquidation on the Effective Date under Chapter 7, including the amount of cash and other tangible assets held by such Debtor and the value of any projected recoveries on actions against third parties and other intangible assets held by such Debtor (the "Liquidation Value"). The Liquidation Value must then be reduced by the costs of liquidation, including administrative costs of the Chapter 7 estates and compensation to the Chapter 7 trustees and other professionals retained by the trustees (the "Liquidation Costs"). After estimating the Liquidation Value and the Liquidation Costs, the Bankruptcy Court must ascertain the potential Chapter 7 recoveries by Creditors and then compare those recoveries with the distributions offered under the Plan to determine if the Plan is in the "best interests" of Creditors in each Class. Attached hereto as <u>Exhibit B</u> is a spreadsheet (the "Spreadsheet") setting forth the Liquidation Value, the Liquidation Costs and the expected return to unsecured creditors in a Chapter 7 case.

The Debtor has valued the property based upon recent sales of similar property compared to the subject property within 10 miles from the subject. However, the driving factor in the valuation will be the time to market the property without improvements, which could take 18 months.

## XVI. ACCEPTANCE AND CONFIRMATION OF THE PLAN

The following is a brief summary of the provisions of the Bankruptcy Code relevant to acceptance and confirmation of a plan of reorganization. Holders of Claims and equity interests are encouraged to review the relevant provisions of the Bankruptcy Code with their own attorneys.

### A. Acceptance of the Plan

This Disclosure Statement is provided in connection with the solicitation of acceptances of the Plan. The Bankruptcy Code defines acceptance of a plan of reorganization by a Class of Claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the Allowed Claims of that Class that have actually voted or are deemed to have voted to accept or reject a plan. The Bankruptcy Code defines acceptance of a plan of reorganization by a Class of interests as acceptance by at least two-thirds in amount of the allowed interests of that Class that have actually voted or are deemed to have voted to accept or reject a plan.

### B. Confirmation

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. Notice of the Confirmation Hearing regarding the Plan has been provided to all known holders of Claims and equity interests or their respective representatives along with this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform with the Bankruptcy Rules, must set forth the name of the objecting party, the nature and amount of

Claims or equity interests held or asserted by that party against the Debtor's Estate or property, and the specific basis for the objection. Such objection must be filed with the Bankruptcy Court, together with a proof of service, and served on all parties and by the date set forth on the notice of the Confirmation Hearing.

At the Confirmation Hearing, the Debtor will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If the Bankruptcy Court so determines, the Bankruptcy Court will enter an order confirming the Plan. The applicable requirements of Section 1129 of the Bankruptcy Code are as follows:

● The Plan must comply with the applicable provisions of the Bankruptcy Code;

● The Debtor must have complied with the applicable provisions of the Bankruptcy Code;

● The Plan must have been proposed in good faith and not by any means forbidden by law;

● Any payment made or promised to be made by the Debtor under the Plan for professional services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan, must have been disclosed to the Bankruptcy Court, and any such payment made before Confirmation of the Plan must be reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment must be subject to the approval of the Bankruptcy Court as reasonable;

●The Debtor must have disclosed the identity and affiliates of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, must be consistent with the interests of holders of Claims and equity interests and with public policy, and the Debtor must have disclosed the identity of any insider that the reorganized Debtor will employ or retain, and the nature of any compensation for such insider;

● With respect to each Class of impaired Claims or equity interests, either each holder of a Claim or equity interest of such Class must have accepted the Plan, or must receive or retain under the Plan on account of such Claim or equity interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code;

● Each Class of Claims or equity interests must have either accepted the Plan or not be impaired under the Plan;

● Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Allowed Administrative Claims will be paid in full on the Effective Date;

● If a Class of Creditors is impaired under the Plan, at least one impaired Class of Claim must have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such Class; and

● Confirmation of the Plan must not be followed by the liquidation, or the need for further financial reorganization of the Debtor or any other successor.

## XVII. MISCELLANEOUS PROVISIONS

### A. Filing Objections to Claims

From and after the Effective Date, the Debtor, in its capacity as estate representative, may litigate to Final Order, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

### B. Holding of, and Failure to Claim, Undeliverable Distributions

All Distributions other than Distributions to the Lenders are to be made to the holder of each Allowed Claim by the Debtor as estate representative at the address of such holder listed on the Schedules or proof of claim filed by such holder at the time of such Distribution. Distributions to the Lenders are to be made by tendering such Distributions to the Manager for the benefit of the Lenders. If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then current address, at which time all required Distributions shall be made to such holder. Undeliverable Distributions shall be held by the Debtor until such Distributions are claimed. All Claims for undeliverable Distributions must be made within ninety (90) days following a Distribution. After such date, all unclaimed Distributions shall be allocated pro rata to the members of the Class related to such Distribution notwithstanding any federal or state escheat laws to the contrary.

### C. Fractional Amounts

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

### D. Ex Parte Relief

Upon ex parte motion by the Debtor after the Confirmation Date, the Bankruptcy Court may enter such order and further orders as may be necessary or appropriate to instruct and direct the Debtor and others, and to facilitate the Distributions contemplated in the Plan.

### E. Binding Effect

The Plan shall be binding on, and shall inure to the benefit of, the Debtor and the holders of all Claims and equity interests and their respective successors and assigns.

### F. Exculpation

The Debtor, the Parent, the Manager, Clayton and its affiliates and each member of the Steering Committee and their respective officers, directors, agents, managers, shareholders or attorneys shall not be liable for any actions or omissions taken or not taken in connection with or arising out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the

consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

### G. Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, all Creditors and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada, without giving effect to Nevada's choice of law provisions.

### H. Modification of Payment Terms

At any time after the Effective Date, the Debtor may modify the treatment of any Allowed Claim or equity interest in any manner adverse to the holder of such Claim or equity interest only with the prior written consent of the holder whose Allowed Claim or equity interest treatment is being adversely affected.

### I. United States Trustee Fees

The Debtor shall pay all quarterly fees payable to the Office of the United States Trustee after Confirmation in connection with the Chapter 11 Case, consistent with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. § 1930(a)(6).

### J. Computation of Time

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

### K. Final Decree

After the Estate is fully administered, the Debtor shall file an application for a Final Decree, and shall serve the application on the U.S. Trustee, together with a proposed Final Decree.

///

///

///

///

///

///

///

## XVIII. RECOMMENDATION AND CONCLUSION

The Debtor has analyzed different scenarios and believes that the Plan will provide for a larger distribution to holders of Claims than would otherwise result if an alternative restructuring plan were proposed or if the Debtor was liquidated under Chapter 7. In addition, any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in potentially smaller distributions to the holders of Claims and equity interests. Accordingly, the Debtor recommends confirmation of the Plan and urges all holders of Allowed Claims to vote to accept the Plan and to indicate acceptance by returning their Ballots so as to be received by no later than the voting deadline.

Dated: March 7, 2014


/s/ Shaun Martin
Native Energy Farms, LLC
By Shaun Martin
its Managing Member

## EXHIBIT A

## LIQUIDATION ANALYSIS

| | Liquidation (sold via auction) | % Recovery Low/High | Under Plan (36 months to Market) |
|---|---|---|---|
| **Property:** | $1,100,000.00 | | $8,000,000.00 |
| **Claims:** | | | |
| SMI/ISC | ($1,298,000.00) | 84%/100% | ($1,298,000.00) |
| Gen. Unsecured | ($30,000.00) | 0%/100% | ($30,000.00) |
| Admin Claims | ($26,213.00) | 0%/100% | ($26,213.00) |
| SMI/ISC 20% of Profit | -- | 0%/100% | ($797,036.00) |
| Equity Interest | -- | 0%/100% | $5,848,751.00 |

1

## **EXHIBIT B**

2

## **DISTRIBUTIONS UNDER THE PLAN**

3

4

**NEW DIP LOAN:**      **$2,000,000.00**

5

6

Estimated Points
and Fees          ($125,000.00)

7

Admin Claims:        ($26,213.00)

8

Global Guidance      ($22,500.00)

9

10

**Total Amount of
DIP Loan Available**

11

**to Debtor for Project**      **$1,826,287.00**

12

## **DISTRIBUTIONS AFTER DEVELOPMENT AND SALE OF PROPERTY**

13

14

**SALE PRICE:**        **$8,000,000.00**

15

**DIP Loan**        **$2,000,000.00**

16

**SMI/ISC Loan**      **$1,298,000.00**

17

**GGG, LLC**        **($9,982.50)**

18

**Interest on DIP Loan:**    **($600,000.00)**

19

**Interest Due to SMI/ISC**    **($116,820.00)**

20

21

**Profit:**        **$3,975,197.50**

22

**20% Profit to SMI/ISC**    **($795,039.50)**

24

**Distribution to Equity Interest**    **$3,180,158.00**

24

25

26

27

28