Steven L. Yarmy, Esq.
Nevada Bar No. 8733
2595 S. Torrey Pines Drive
Las Vegas, Nevada 89146
 (702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com
admin@yarmylaw.com
Attorney for Debtor

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 14-13482-ABL |
| NATIVE ENERGY FARMS, LLC, | Chapter 11 |
| Debtor(s) | **Hearing Date: June 3, 2015**<br>**Hearing Time: 1:30 p.m.** |

## AMENDED THIRD PLAN OF REORGANIZATION
### (REDLINE VERSION)

## TABLE OF CONTENTS

**ARTICLE 1. DEFINITIONS AND RULES OF INTERPRETATION** ........................................... **4**
1.1. Administrative Claim................................................................................................. 4
1.2. Administrative Claim Bar Date. ................................................................................ 4
1.3. Allowed. ..................................................................................................................... 4
1.4. Bankruptcy Code. ...................................................................................................... 5
1.5. Bankruptcy Court. ..................................................................................................... 5
1.6. Bankruptcy Rules. ..................................................................................................... 5
1.7. Bar Date. .................................................................................................................... 5
1.8. Business Day. ............................................................................................................. 5
1.9. Cash. ........................................................................................................................... 5
1.10. Chapter 11 Case. ...................................................................................................... 5
1.11. Claim. ....................................................................................................................... 5
1.12. Confirmation............................................................................................................. 6
1.13. Confirmation Date. ................................................................................................... 6
1.14. Confirmation Hearing. ............................................................................................. 6
1.15. Confirmation Order. ................................................................................................. 6
1.16. Creditor. ................................................................................................................... 6
1.17. Debtor. ...................................................................................................................... 6
1.18. DIP Lender. .............................................................................................................. 6

1.19. Disputed. ........................................................................................................ 6
1.20. Distribution. .................................................................................................... 6
1.21. Effective Date. ................................................................................................ 6
1.22. Estate. .............................................................................................................. 7
1.23. Final Decree. ................................................................................................... 7
1.24. Final Order. ..................................................................................................... 7
1.25. Governmental Unit. ........................................................................................ 7
1.26. Governmental Unit Claims Bar Date. ............................................................ 7
1.27. Guarantee. ....................................................................................................... 7
1.28. Guarantor. ....................................................................................................... 7
1.29. Lender. ............................................................................................................. 7
1.30. Lien. ................................................................................................................. 7
1.31. Local Rules. ..................................................................................................... 8
1.32. Manager. .......................................................................................................... 8
1.33. Note Claim. ...................................................................................................... 8
1.34. Person. ............................................................................................................. 8
1.35. Petition Date. ................................................................................................... 8
1.36. Plan. ................................................................................................................. 8
1.37. Plan Documents. .............................................................................................. 8
1.38. Professionals. ................................................................................................... 8
1.39. Professional Fees. ............................................................................................ 8
1.40. Property. ........................................................................................................... 8
1.41. Property Tax Claims. ....................................................................................... 9
1.42. Pro Rata Share. ................................................................................................ 9
1.43. Releasing Lender. ............................................................................................ 9
1.44. Releasing Lender Parties. ................................................................................ 9
1.45. Schedules. ........................................................................................................ 9
**ARTICLE 2. TREATMENT OF UNCLASSIFIED CLAIMS** .......................................... **9**
2.1. Unclassified Claims. ......................................................................................... 9
2.2. Administrative Claims. ...................................................................................... 9
2.2.1. Generally. ....................................................................................................... 9
2.2.2. Requests for Payment. .................................................................................. 10
2.3. Claims for Professional Fees. .......................................................................... 10
2.4. Post-Effective Date Professional Fees. ........................................................... 10
**ARTICLE 3. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ................ **10**
**ARTICLE 4. TREATMENT OF CLAIMS AND EQUITY INTERESTS** ......................... **11**
4.1. Class 1 – Claim of SMI/ISC, Corp. ................................................................ 11
4.2. General Unsecured Claims ............................................................................... 12
4.3. DIP Lender – Golden Bear Capital .................................................................. 12
4.4. Equity Interest of the Debtor ........................................................................... 12
**ARTICLE 5. IMPLEMENTATION OF THE PLAN** ...................................................... **13**
5.1. Issuance of Membership Interests In Debtor. .................................................. 13
5.2. Adoption of Operating Agreement. .................................................................. 13
5.3. Management. ..................................................................................................... 13
5.4. Release of Unsecured Note Claim. .................................................................. 13
5.5. Certain Tax Provisions. .................................................................................... 13
5.6. Issuance of New Membership Units or Interest. .............................................. 13
5.7. Post-confirmation matters. ............................................................................... 14

5.7.1. Responsibilities of the Reorganized Debtor. ................................................ 14
5.8. Release of Claims Against Debtor. ................................................................ 14
5.9. Release of Claims by Debtor Parties. ........................................................... 14
5.10. Corporate Authority. .................................................................................... 15
**ARTICLE 6. CONDITIONS PRECEDENT** ........................................................ **15**
6.1. Condition to Confirmation. ........................................................................... 15
6.2. Conditions to Effectiveness. ......................................................................... 15
6.3. Waiver of Conditions. ................................................................................... 16
6.4. Failure of Conditions. ................................................................................... 16
**ARTICLE 7. [RESERVED]** ...................................................................................... **16**
**ARTICLE 8. DISPUTED CLAIMS** ........................................................................ **16**
8.1. Objection Deadlines. ..................................................................................... 16
8.2. Prosecution of Disputed Claims. .................................................................. 16
8.3. Entitlement to Plan Distributions upon Allowance. ..................................... 16
**ARTICLE 9. EFFECT OF CONFIRMATION** ..................................................... **16**
9.1. Revesting of Assets. ...................................................................................... 16
9.2. Discharge. ...................................................................................................... 17
**ARTICLE 10. RETENTION OF JURISDICTION** .............................................. **17**
**ARTICLE 11. AMENDMENT AND WITHDRAWAL OF PLAN** ......................... **19**
11.1. Amendment of the Plan. .............................................................................. 19
11.2. Revocation or Withdrawal of the Plan. ....................................................... 19
**ARTICLE 12. ACCEPTANCE OR REJECTION OF THE PLAN** ....................... **19**
12.1. Impaired Classes to Vote. ........................................................................... 19
12.2. Acceptance by Class of Creditors. .............................................................. 19
**ARTICLE 13. MISCELLANEOUS** ....................................................................... **20**
13.1. Settlement of Objections after Effective Date. ........................................... 20
13.2. Holding of, and Failure to Claim, Undeliverable Distributions. ................ 20
13.3. Fractional Amounts. .................................................................................... 20
13.4. Ex Parte Relief. ........................................................................................... 20
13.5. Exculpation. ................................................................................................ 20
13.6. Binding Effect. ............................................................................................ 20
13.7. Governing Law. ........................................................................................... 21
13.8. Modification of Payment Terms. ................................................................. 21
13.9. United States Trustee Fees. ......................................................................... 21
13.10. Computation of Time. ............................................................................... 21
13.11. Final Decree. ............................................................................................. 21
13.12. No Admissions. .......................................................................................... 21

## PLAN OF REORGANIZATION

NATIVE ENERGY FARMS, LLC, a Nevada limited liability company (the "Debtor") SEE OPERATING AGREEMENT ATTACHED HERETO AS EXHIBIT "C.", the debtor and debtor-in-possession in the above-captioned Chapter 11 Case, hereby proposes the following plan of reorganization (the "Plan") for the resolution of the Debtor's outstanding Claims and equity interests.

All holders of Claims against, and equity interests in, the Debtor are encouraged to read the Plan and the related solicitation materials in their entirety before voting to accept or reject the Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in Section 11.1 of the Plan, the Debtor expressly reserves the right to alter, amend, or modify the Plan one or more times before its substantial consummation.

## ARTICLE 1. DEFINITIONS AND RULES OF INTERPRETATION

For purposes of the Plan, all capitalized terms shall have the meanings ascribed to them in this Article 1 of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, retains the meaning specified for such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in the Plan, the following terms have the meanings specified below:

**1.1. Administrative Claim.**

A Claim for any cost or expense of administration of the Chapter 11 Case allowed under sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's businesses; (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; and (d) all Professional Fees to the extent Allowed by Final Order under sections 330, 331, or 503 of the Bankruptcy Code.

**1.2. Administrative Claim Bar Date.**

The date that is thirty (30) days after the Effective Date.

**1.3. Allowed.**

With reference to any Claim against or equity interest in the Debtor, (a) any Claim which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or objection to Claim has been filed, (b) any Claim or equity interest allowed hereunder, (c) any Claim, proof of which was filed on or before the Bar Date, or, with respect to a Governmental Unit, before the Governmental Unit Claims Bar Date, or equity interest, which is not Disputed, (d) any Claim or equity interest that is compromised, settled or

- 4 -

otherwise resolved pursuant to a Final Order of the Bankruptcy Court, or (e) any Claim or equity interest which, if Disputed, has been allowed by Final Order.

**1.4. Bankruptcy Code.**

Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

**1.5. Bankruptcy Court.**

The United States Bankruptcy Court for the District of Nevada that will have jurisdiction over the Chapter 11 Case.

**1.6. Bankruptcy Rules.**

Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules, as applicable to the Chapter 11 Case.

**1.7. Bar Date.**

The date established by order of the Bankruptcy Court as the last day for the filing of proofs of claim against the Debtor; provided, that the deadline for filing proofs of claim by a Governmental Unit shall be the Governmental Unit Claims Bar Date.

**1.8. Business Day.**

Any day other than a Saturday, Sunday, or legal holiday, as defined in Bankruptcy Rule 9006(a).

**1.9. Cash.**

Currency, certified checks, official checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.10. Chapter 11 Case.**

The case under Chapter 11 of the Bankruptcy Code in which the Debtor is a debtor and debtor-in-possession, pending before the Bankruptcy Court.

**1.11. Claim.**

A claim, as defined in section 101(5) of the Bankruptcy Code, against a Person or its property, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.12. Confirmation.**

The entry of the Confirmation Order by the Bankruptcy Court.

**1.13. Confirmation Date.**

The date on which the Bankruptcy Court enters the Confirmation Order.

**1.14. Confirmation Hearing.**

The hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

**1.15. Confirmation Order.**

The order of the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code.

**1.16. Creditor.**

Has the meaning set forth in section 101(10) of the Bankruptcy Code.

**1.17. Debtor.**

Has the meaning set forth in the preamble to the Plan.

**1.18. DIP Lender.**

Has the meaning set forth in Section 5.8 of the Plan.

**1.19. Disputed.**

With respect to Claims, any Claim: (a) that is listed in the Schedules as unliquidated, disputed, or contingent and as to which no proof of claim has been filed; or (b) as to which the Debtor or any other proper party-in-interest has interposed a timely objection or request for estimation, or has sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, or which is otherwise disputed by the Debtor in accordance with applicable law and as to which such objection, request for estimation, or request for subordination has not been withdrawn or determined by a Final Order.

**1.20. Distribution.**

A payment of Cash to the holder of an Allowed Claim pursuant to the Plan.

**1.21. Effective Date.**

The later of: (a) the first Business Day that is at least fourteen (14) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (b) the Business Day on which all of the conditions set forth in Section 6.2 of the Plan have been satisfied or waived.

**1.22. Estate.**

The estate created in the Debtor's Chapter 11 Case in accordance with section 541 of the Bankruptcy Code.

**1.23. Final Decree.**

A final decree closing this Chapter 11 Case.

**1.24. Final Order.**

An order or judgment of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, move for retrial, or seek other review or reconsideration has expired and as to which no appeal, petition for certiorari, motion for retrial or other proceeding for review or reconsideration is pending; (b) as to which any right to appeal, to petition for certiorari, to move for retrial, or to seek other review or reconsideration has been waived in writing in form and substance satisfactory to the Debtor; or (c) as to which, if an appeal, writ of certiorari, retrial or other review or reconsideration has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed or from which such relief was sought or such court has denied such appeal or such relief and the time to take any further appeal, petition for certiorari, move for retrial or seek other review or reconsideration has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order does not prevent such order from being a Final Order.

**1.25. Governmental Unit.**

Has the meaning set forth in section 101(27) of the Bankruptcy Code.

**1.26. Governmental Unit Claims Bar Date.**

The deadline for filing proofs of claim by a Governmental Unit.

**1.27. Guarantee.**

The guarantee issued by the Guarantor in favor of the Lenders in connection with the Note.

**1.28. Guarantor.**

Reserved.

**1.29. Lender.**

A holder of a beneficial interest in the Note.

**1.30. Lien.**

A lien as defined in section 101(37) of the Bankruptcy Code, except a lien that has been avoided in accordance with sections 506, 544, 545, 546, 547, 548, 549, or 553 of the Bankruptcy Code.

**1.31. Local Rules.**

The local rules of the United States Bankruptcy Court for the District of Nevada governing proceedings in this Chapter 11 Case.

**1.32. Manager.**

The Person designated by NEF to manage the reorganized Debtor pursuant to the terms of the existing Operating Agreement.

**1.33. Note Claim.**

That certain unsecured promissory note dated as of April 13, 2013 in the original principal amount of $1,100,000 issued by SMI/ISC and assumed by the Debtor prior to the Petition Date and granting SMI/ISC a subordinate second deed of trust junior to the DIP Lender.

**1.34. Person.**

Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated association or organization, or other "person" as defined in section 101(41) of the Bankruptcy Code as well as any governmental agency, Governmental Unit or associated political subdivision.

**1.35. Petition Date.**

The date upon the Debtor files a petition for relief under chapter 11 of the Bankruptcy Code.

**1.36. Plan.**

This plan of reorganization, either in its present form or as it may be amended, supplemented or modified from time to time, including, without limitation, all of its annexed exhibits and schedules and the Plan Documents.

**1.37. Plan Documents.**

All documents required to implement the provisions of the Plan.

**1.38. Professionals.**

Those Persons employed in accordance with an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code and to be compensated for services under sections 327, 328, 329, 330, and 331 of the Bankruptcy Code.

**1.39. Professional Fees.**

The Administrative Claims for compensation and reimbursement of expenses of Professionals submitted in accordance with sections 330 or 331 of the Bankruptcy Code, or any Administrative Claims Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.40. Property.**

All of the Debtor's right, title and interest of any nature in property of any kind as of the Confirmation Date, wherever located, as specified in section 541 of the Bankruptcy Code, including, without limitation, the real property identified by APN No. 081-140-023 located in the County of Santa Barbara, California. Legal Description is attached as Exhibit A.

**1.41. Property Tax Claims.**

Any Claims of a Governmental Unit for property taxes related to the Property, whether such liability is *in rem, in personam* or both.

**1.42. Pro Rata Share.**

The proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular class, including, without limitation, Disputed Claims that have not been disallowed by a Final Order.

**1.43. Releasing Lender.**

Has the meaning set forth in Section 5.8.

**1.44. Releasing Lender Parties.**

Has the meaning set forth in Section 5.8.

**1.45. Schedules.**

The schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements may have been or may be supplemented or amended from time to time.

**ARTICLE 2. TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1. Unclassified Claims.**

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including, without limitation, Claims for Professional Fees are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims instead are treated separately in accordance with this Article 2 and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2. Administrative Claims.**

**2.2.1. Generally.**

Each Administrative Claim other than a Claim for Professional Fees shall be paid in full in Cash by the Debtor on the later to occur of (a) the Effective Date; (b) the tenth (10th) day after such Administrative Claim is Allowed; and (c) such date as the holder of any such Administrative Claim and the Debtor may agree.

**2.2.2. Requests for Payment.**

All requests for payment of Administrative Claims, other than requests for payment of Claims for Professional Fees, must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor.

**2.3. Claims for Professional Fees.**

Each Person seeking an award by the Bankruptcy Court of Professional Fees,: (a) must file a fee application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days of the Effective Date; and (b) if the Bankruptcy Court grants such an award, must be paid in full in Cash by the Debtor with funds from the DIP Loan in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable. All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the requirements of the Bankruptcy Code, the Bankruptcy Rules and any applicable guidelines and with all of the terms and conditions set forth in any applicable order of the Bankruptcy Court, including, without limitation, the Confirmation Order, and all other orders governing payment of Professional Fees.

**2.4. Post-Effective Date Professional Fees.**

All Professional Fees for services rendered in connection with the Chapter 11 Case and the Plan after the Effective Date may be paid by the Debtor upon receipt of an invoice for such services, or on such other terms to which the Debtor and the relevant Professional may agree, which fees are subject to bankruptcy court approval.

## ARTICLE 3. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Article 2) and holders of equity interests, including holders of Old Membership Units are placed in the Classes described below for all purposes, including, without limitation, voting on, Confirmation of, and Distribution under, the Plan:

| Class | Claim | Claim Amount | Status | Voting Rights |
|---|---|---|---|---|
| 1 | SMI/ISC, Corp. | $1,298,000.00 | Impaired | Entitled to Vote |
| 2 | General Unsecured Claims-Global Guidance Group, LLC | $30,000.00 | Impaired | Entitled to Vote |
| 3 | Golden Bear Capital or a Substitute § 364(d)(1) DIP Lender | $1,500,000.00 | Unimpaired | Deemed to Accept |
| 4 | Equity Interest | $7,000,000.00 | Unimpaired | Deemed to Accept |

## ARTICLE 4. TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1. Class 1 – Claim of SMI/ISC, Corp.

This Class 1 claim will consist of a Secured Claim in favor of SMI/ISC, Corp. against the Debtor's Vacant Land located in Goleta, California more commonly known as APN: 081-140-023, which will be secured by a Second Deed of Trust subordinate to the DIP Lender's Super Priority First Deed of Trust.

(a) On the Effective Date, the holder of the unsecured Note dated April 13, 2013 in favor of SMI/ISC, Corp., and in complete satisfaction of such claim shall be fully released and converted to a secured claim and subordinated second deed of trust to the Claim of the DIP Lender Golden Bear Capital:

(b) *Principal Balance*. The principal balance of the Class 1 claim shall be the Allowed Secured Lender Claim in the amount of $1,298,000.00.

(c) *Lien*. From and after the Confirmation Date, the Holder of the Class 1 Claim shall be allowed to record a subordinated second deed of trust in the Collateral consistent with the applicable Loan Documents until the Class 1 claim is repaid in full.

(d) *Post-Effective Date Interest Rate*. Interest shall accrue on the Class 1 Holders Claim at an interest only rate of 3.00% per annum.

(e) *Monthly Payments*.

(i) There shall be no monthly payments, payments shall accrue interest until paid.

(f) *Maturity Date*. The unpaid balance of the Class 1 claim shall be due and payable 36 months after the Effective Date.

(g) *Prepayment*. There shall be no penalty for prepayment for all or part of the Class 1 claim prior to the Maturity Date.

(h) *Property Taxes & Insurance*. The Debtor shall be responsible for all property taxes and general liability insurance.

(i) *Refinancing and Sale Options*. Prior to the Maturity Date, Reorganized Debtor shall have the absolute right to act as follows:

(i) Refinance; provided, however, that the proceeds of such refinancing loan are sufficient to pay, and are utilized to pay, all sums due and owing under the Class 1 claim at the time of closing of such refinancing, unless Secured Lender otherwise agrees; or

(ii) Sell the Real Property free and clear of Secured Lender's Liens; provided, however, that the proceeds of such sale are sufficient at the time of closing of such sale to pay, and are utilized to pay, all sums due and owing under the Class 1 claim, unless Secured Lender otherwise agrees.

(j) *Equity Share in Sales Profits*. SMI/ISC shall be entitled to twenty percent (20%) of the sales profits from the sale of the property after all liens and expenses are deducted.

(k) *Default*. On the Effective Date, the Loan Documents shall remain in full force and effect as related to Default terms under the Note and Deed of Trust. Should the Debtor not be able to satisfy the above obligation to SMI/ISC the Debtor shall provide and SMI/ISC shall accept a Deed in Lieu of Foreclosure or Quiet Claim/Grant Deed in full satisfaction of its obligations to SMI/ISC.

**Impairment and Voting:** Class 1 is impaired. Holders of the Class 1 claim are entitled to vote to accept or reject this Plan.

### 4.2. General Unsecured Claims

Class 2 Claims consist of the General Unsecured Claims against the Debtor of Global Guidance Group, LLC. Class 2 solely consists of Global Guidance Group, LLC. The Debtor has no other unsecured claims or creditors.

Global Guidance Group, LLC performed consulting for the Debtor relating to business strategy, development, and economic parameters of the Subject Property for the purpose of developing a business plan.

(a) *Treatment:* Holders of Class 2 General Unsecured Claims on the Effective Date shall, in full satisfaction, settlement, release and exchange for such Allowed General Unsecured Claims, shall receive two payments. The first payment shall come from the DIP Loan Proceeds equal to $22,500.00. The remaining $7,500.00 shall be paid when the property sells, with interest to accrue at a rate of ten percent per annum compounding.

**Impairment and Voting:** Class 2 is impaired. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject this Plan.

Class 3 will consist of Golden Bear Capital's and/or its assigns or a substitute lender 11 U.S.C. § 364(d)(1) super priority first deed of trust.

The Golden Bear Capital loan will be in the amount of $1,500,000.00. The interest rate is 11.9 percent per annum. The loan is amortized over thirty (30) years and due in three (3) years. Lender has option to extend term for additional fee of two points per year. The DIP loan will be applied for upon effective date of the confirmation order. No loan has been approved or disbursed.

### 4.4. Equity Interest of the Debtor

Class 4 consists of the Equity Interest of the Debtor.

(a) *Treatment.* The Equity Interest of the Debtor are unimpaired by the Plan and conclusively deemed to have accepted the Plan, pursuant to Bankruptcy Code section 1126(f). No solicitation is required.

*Impairment and Voting:* Class 4 is not unimpaired by the Plan, the Holders of Allowed General Unsecured Claims are conclusively deemed to have accepted the Plan, pursuant to Bankruptcy Code section 1126(f). No solicitation is required.

## ARTICLE 5. IMPLEMENTATION OF THE PLAN

### 5.1. Issuance of Membership Interests In Debtor.

On the Effective Date, the Membership Interest or Units shall not be cancelled and the Debtors Member(s) may sell, transfer, or assign membership units or interest as necessary.

### 5.2. Adoption of Operating Agreement.

On and after the Effective Date, and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall be governed by the Existing Operating Agreement and such agreement shall supersede all other operating agreements in respect of the Debtor.

### 5.3. Management.

On and after the Effective Date, the Debtor shall be managed as provided in the Existing Operating Agreement. Further, without limiting the generality of the foregoing, the Manager shall be entitled to receive a Management Fee and all other compensation and reimbursements described in the Operating Agreement. The entry of the Confirmation Order shall ratify and approve all actions taken by the Debtor prior to the date thereof.

### 5.4. Release of Unsecured Note Claim.

On the Effective Date, the Unsecured Note Claim of SMI/ISC shall be fully released and discharged. SMI/ISC shall have the secured claim described in section 4.1, Class 1.

### 5.5. Certain Tax Provisions.

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer as part of a transaction authorized by the Plan, including, without limitation, any transfers of Property shall not be taxed under any law imposing a stamp tax or similar tax.

### 5.6. Issuance of New Membership Units or Interest.

Pursuant to section 1145(a) of the Bankruptcy Code, section 5 of the Securities Act of 1933 and any state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security shall not apply to the issuance of new Membership Interests. Notwithstanding the foregoing, any new Membership Interest or Units, once issued, shall not be publically traded and may only be transferred on the terms and conditions set forth in the Operating Agreement. In addition, pursuant to section 1125(e) of the Bankruptcy Code, any Persons that solicit the acceptance or rejection of the Plan, including, the Debtor and the Manager, in good faith and in compliance with the Bankruptcy Code, or that

participate, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale or purchase of a security, offered or sold under the Plan, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities. Pursuant to NRS 90.530(7), (8), (9) and (21) exempts the Debtor from the transactions proposed in this Plan.

**5.7. Post-confirmation matters.**

**5.7.1. Responsibilities of the Reorganized Debtor.**

On and after the Effective Date, without need for further action by the members or managers of the Debtor, and without further order of the Bankruptcy Court, the Debtor shall be appointed estate representative under section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to: (a) make all Distributions required to be made on or after the Effective Date to the holders of Allowed Claims; (b) settle, resolve and object to Claims, including Note Claims; (c) retain, employ and utilize such Professionals as may be necessary without further approval of the Bankruptcy Court; and (d) do all things necessary and appropriate to fulfill the duties and obligations of the Debtor under the Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules. The Debtor, in its capacity as estate representative, shall comply with all withholding and reporting requirements imposed upon it by any Governmental Unit under applicable law and all Distributions shall be subject to such withholding and reporting requirements, if any.

**5.8. Release of Claims Against Debtor.**

On the Effective Date, each of the Creditors voting in favor of the Plan (the "Releasing Creditors") on behalf of itself and each of its agents, successors, assigns and representatives of any kind (collectively, the "Releasing Parties"), shall and hereby does voluntarily forever release and discharge the Debtor, any other obligors under the Note Claim, any Guarantor of the Debtor, if any, any obligors under any other guarantees of the Note (if any) and each of such Person's respective agents, successors, assigns and representatives of any kind (collectively, the "Debtor Parties") from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Effective Date arising out of or in any way related to the Note, the Guarantee, any other guarantees of the Note or the Property; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise.

**5.9. Release of Claims by Debtor Parties.**

On the Effective Date, each Debtor Party hereby forever releases and discharges each Releasing Lender Party from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Effective Date arising out of or in any way related to the Note, the Guarantee, any other guarantees of the Note (if any) or the Property; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise.

**5.10. Corporate Authority.**

The entry of the Confirmation Order shall constitute authorization for the Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and consummate, the Plan, and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule, or regulation, including, without limitation, any action, among other things, the issuance of new Membership Interests or units as necessary, and the adoption of the Existing Operating Agreement under the Plan.

## ARTICLE 6. CONDITIONS PRECEDENT

**6.1. Condition to Confirmation.**

~~It is a condition precedent to Confirmation that the Bankruptcy Court enter a Confirmation Order in form and substance reasonably acceptable to the Debtor and Clayton.~~ Confirmation Order shall have been entered by the Bankruptcy Court and shall have become a Final Order

**6.2. Conditions to Effectiveness.**

The following are conditions precedent to the occurrence of the Effective Date:

(a) the Confirmation Date shall have occurred;

(b) the Confirmation Order shall have been entered and shall be a Final Order;

(c) no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, remain pending;

(d) the Debtor shall have received all approvals necessary or appropriate to substantially consummate the Plan; and

(e) each and every Plan Document shall be fully executed and in form and substance reasonably ~~satisfactory to the Debtor and Clayton~~ necessary to effectuate Confirmation.

### 6.3. Waiver of Conditions.

Conditions to Confirmation and the occurrence of the Effective Date may be waived, in whole or in part, by the Debtor at any time with the consent of ~~Clayton~~ any affected creditor or an order of the Bankruptcy Code.

### 6.4. Failure of Conditions.

If the Effective Date shall not occur, the Debtor and all other parties in interest shall retain all their rights and remedies as if the Plan had not been proposed. Among other things, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver of any Claims against or equity interests in the Debtor or (b) prejudice in any manner the rights of the Debtor or the Lenders.

## ARTICLE 7. [RESERVED]

## ARTICLE 8. DISPUTED CLAIMS

### 8.1. Objection Deadlines.

Any objections to Administrative Claims and all other Claims made after the Effective Date shall be filed and served by the Debtor on the holders of such Administrative Claims and Claims not later than sixty (60) days after the Effective Date or such later date as may be approved by the Bankruptcy Court via ex parte request.

### 8.2. Prosecution of Disputed Claims.

The Debtor, as estate representative, may object to the allowance of Claims and Administrative Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 13.1.

### 8.3. Entitlement to Plan Distributions upon Allowance.

Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

## ARTICLE 9. EFFECT OF CONFIRMATION

### 9.1. Revesting of Assets.

Subject to the provisions of the Plan and the Confirmation Order, and pursuant to Debtor's Motion For Summary Order in related Adversary Case No. 14-01131-ABL (See FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT at Docket No. 32 of Adversary Proceeding) the property of the Estate,

including, without limitation, all the Property and Land Commonly known as Assessor's Parcel Number: 081-140-023 in the County of Santa Barbara, California, shall vest in the Debtor on the Effective Date. As of the Effective Date, all such property, including, without limitation, the Santa Barbara Property, shall be free and clear of all Claims, Liens and equity interests, including, without limitation, any claims arising from the Note, any claims arising from Old Ownership Interest to the fullest extent permitted by section 1141(c) of the Bankruptcy Code. And any restrictive covenants from Instrument Numbers 99-021850 and 99-021851 relating to religious and cultural purposes shall be stricken, removed and released from the real property records and shall not impair the debtor's property rights for development. From and after the Effective Date, the Debtor shall be free of any restriction imposed by the Bankruptcy Court, the Bankruptcy Code and the Bankruptcy Rules, other than the obligations set forth in the Plan, or the Confirmation Order. The Property is more fully described in **Exhibit A.** The Debtor may borrow money against the property or sell the property at its discretion.

**9.2. Discharge.**

~~Except as provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and equity interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of all Claims Except as provided in the Plan or the Confirmation Order, Confirmation discharges the Debtor and the reorganized Debtor from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted the Plan.~~

<u>Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.</u>

**ARTICLE 10. RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain and have all authority and jurisdiction as is allowed under the Bankruptcy Code and other applicable law to enforce the provisions, purposes, and intent of the Plan including, without limitation, matters or proceedings that relate to:

(a) allowance, disallowance, determination, liquidation, classification, estimation, or establishment of the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

(b) requests for payment of Claims entitled to priority under section 507(a) of the Bankruptcy Code, including, without limitation, compensation and reimbursement of expenses for Professionals to the extent Bankruptcy Court approval therefore is required under the Plan or the Confirmation Order;

(c) the title, rights or interests of the Debtor in any property real or personal, including, without limitation, the Santa Barbara County Property and the recovery of all assets and property of the Estate wherever located;

(d) any right, power, action, or duty of the Debtor, the Parent, Clayton or the Lenders under the Plan;

(e) any determination or estimation necessary or appropriate under section 505 of the Bankruptcy Code or other determination or estimation relating to tax returns filed or to be filed by the Debtor for periods through the end of the fiscal year in which the Effective Date occurs, including, without limitation, the determination of the amount of taxes, net operating losses, tax attributes, tax benefits, tax refunds, and related matters of the Debtor;

(f) ensuring that Distributions to holders of Allowed Claims are accomplished in accordance with the Plan;

(g) resolution of controversies and disputes, including, without limitation, the correction of any mistake, defect, or omission regarding consummation, interpretation or enforcement of the Plan, the Confirmation Order, and any agreements referred to in the Plan or executed in contemplation of or to implement the Plan;

(h) resolution of any motions, adversary proceedings, contested or litigated matters, and any other matters involving the Debtor that may be pending on the Effective Date;

(i) entry of such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(j) modification of the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or any contract, instrument, release, or other agreement or document created in connection with the Plan; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(k) the entry of an order including injunctions necessary to enforce the title, rights, and powers of the Debtor and the purposes and intent of the Plan, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary;

(1) implementation of the provisions of the Plan and entry of such orders (i) in aid of Confirmation of the Plan, including, without limitation, appropriate orders to protect the Debtor from actions by holders of Claims, or (ii) as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(m) determination of any other matters that (i) may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order except as otherwise provided in the Plan, or (ii) are otherwise provided under the Bankruptcy Code or other applicable law; and

(n) entry of a Final Decree closing the Chapter 11 Case, including, without limitation, provisions for injunctive relief as may be equitable, consistent with Bankruptcy Rule 3022 and for retention of jurisdiction for the Bankruptcy Court for purposes of this Article 10. Notwithstanding anything set forth in this Article 10, nothing in the Plan or the Confirmation Order shall provide the Bankruptcy Court with any jurisdiction to determine the rights of the Debtor, any Guarantor or any of the Lenders under or in connection with NRS §645B.340.

## ARTICLE 11. AMENDMENT AND WITHDRAWAL OF PLAN

### 11.1. Amendment of the Plan.

At any time before the Confirmation Date, the Debtor may alter, amend, or modify the Plan under section 1127(a) of the Bankruptcy Code; provided that the Debtor may not materially modify the treatment of any Class that has accepted the Plan without the consent of such Class. After the Confirmation Date and before substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission in, or reconcile any inconsistencies in the Plan or the Confirmation Order, and to implement such action as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan DEBTOR'S PLAN OF REORGANIZATION dated March 7, 2014 and Corrected/Modified on June 24, 2014 and modified on July 14, 2014 provided, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

### 11.2. Revocation or Withdrawal of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan at any time and for any reason before the Confirmation Date. Without limiting the generality of the foregoing, the Debtor may withdraw the Plan in the event that any Class does not accept the Plan or if there is substantial opposition to the Plan from SMI/ISC or any Creditor notwithstanding such acceptance. If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan or any Plan Documents shall be deemed a waiver of any Claims by or against the Debtor or any other Person in any further proceedings involving the Debtor.

## ARTICLE 12. ACCEPTANCE OR REJECTION OF THE PLAN

### 12.1. Impaired Classes to Vote.

Each holder of a Claim or equity interest in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such holder is deemed to accept or reject the Plan.

### 12.2. Acceptance by Class of Creditors.

An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

## ARTICLE 13. MISCELLANEOUS

### 13.1. Settlement of Objections after Effective Date.

From and after the Effective Date, the Debtor, in its capacity as estate representative, may litigate to Final Order, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

### 13.2. Holding of, and Failure to Claim, Undeliverable Distributions.

All Distributions other than Distributions to the Lenders are to be made to the holder of each Allowed Claim by the Debtor as estate representative at the address of such holder listed on the Schedules or proof of claim filed by such holder at the time of such Distribution. Distributions to the Lenders are to be made by tendering such Distributions to the Manager for the benefit of the Lenders. If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then current address, at which time all required Distributions shall be made to such holder. Undeliverable Distributions shall be held by the Debtor until such Distributions are claimed. All Claims for undeliverable Distributions must be made within ninety (90) days following a Distribution. After such date, all unclaimed Distributions shall be allocated pro rata to the members of the Class related to such Distribution notwithstanding any federal or state escheat laws to the contrary.

### 13.3. Fractional Amounts.

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

### 13.4. Ex Parte Relief.

Upon ex parte motion by the Debtor after the Confirmation Date, when appropriate and not otherwise required to bring on in the normal course with motion and notice of hearing, and otherwise not in violation of any rules of procedure that apply the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to instruct and direct the Debtor and others, and to facilitate the Distributions contemplated in the Plan.

### 13.5. Exculpation.

The Debtor, its Manager, the SMI/ISC, the DIP Lender and its affiliates, and each member or their respective officers, directors, agents, managers, shareholders or attorneys shall not be liable for any actions or omissions taken or not taken in connection with or arising out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

### 13.6. Binding Effect.

The Plan shall be binding on, and shall inure to the benefit of, the Debtor and the holders of all Claims and equity interests and their respective successors and assigns.

### 13.7. Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, all Creditors and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada, without giving effect to Nevada's choice of law provisions.

### 13.8. Modification of Payment Terms.

At any time after the Effective Date, the Debtor may modify the treatment of any Allowed Claim or equity interest in any manner adverse to the holder of such Claim or equity interest only with the prior written consent of the holder whose Allowed Claim or equity interest treatment is being adversely affected.

### 13.9. United States Trustee Fees.

The Debtor shall pay all quarterly fees payable to the U.S. Trustee after Confirmation in connection with the Chapter 11 Case, consistent with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. § 1930(a)(6) until a Final Decree is entered.

### 13.10. Computation of Time.

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

### 13.11. Final Decree.

After the Estate is fully administered, the Debtor shall file an application for a Final Decree, and shall serve the application on the U.S. Trustee, together with a proposed Final Decree.

### 13.12. No Admissions.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN THE DEBTOR, AS A DEBTOR AND DEBTOR-IN-POSSESSION IN THIS CHAPTER II CASE.

IN WITNESS WHEREOF, the Debtor caused the Plan to be executed as of June 2, 2015.

NATIVE ENERGY FARMS, LLC, a Nevada limited liability company

**/s/ Shaun Martin**
By: SHAUN MARTIN
its Managing Member

**/s/ Steven L. Yarmy**
STEVEN L. YARMY
NV Bar #8733
Attorney for Debtor

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

1

2

**EXHIBIT A**

**LEGAL DESCRIPTION**

That portion of the Rancho Nuestra Senora Del Refugio in the County of Santa Barbara, State of California, according to the United States patent thereof recorded July 28, 1866, in Book "A" of Patents, Page 17, et seq., records of said County, described as follows:

Beginning at the Westerly terminus of that certain course in the Northerly line of the land described in the deed to Robert L. Waldron, et al., recorded June 22, 1970, as Instrument Number 16018, in Book 2312, Page 274 of Official Records of said County, having a bearing and distance of "South 82º 22' 10" East, 323.88 feet";

Thence 1st, S. 82º 22' 10" E., along said Northerly line, 323.88 feet to an angle point therein;

Thence 2nd, N. 42º 21' 00" E., continuing along said Northerly line, 145.00 feet to an angle point therein;

Thence 3rd, N. 88º 45' 00" E., continuing along said Northerly line, 70.00 feet to an angle point therein;

Thence 4th, S. 55º 58' 37" E., continuing along said Northerly line, 251.10 feet to an angle point therein;

Thence 5th, N. 84º 43' 18" E., continuing along said Northerly line, 355.88 feet to an angle point therein;

Thence 6th, N. 67º 49' 32" E., continuing along said Northerly line, 182.00 feet to angle point therein;

Thence 7th, N. 58º 05' 58" E., continuing along said Northerly line, 313.85 feet to an angle point therein;

Thence 8th, S. 88º 33' 58" E., continuing along said Northerly line, 320.35 feet to an angle point therein;

Thence 9th, S. 67º 10' 28" E., continuing along said Northerly line, 257.39 feet to an angle point therein;

Thence 10th, S. 33º 31' 32" E., continuing along said Northerly line, 337.08 feet to an angle point therein;

Thence 11th, S. 6º 20' 40" W, continuing along said Northerly line, 151.33 feet to an angle point therein;

Thence 12th, S. 69º 12' 50" E., continuing along said Northerly line, 453.10 feet to an angle point therein;

Thence 13th, leaving said Northerly line, S. 74º 05' 19" E., a distance of 1016.41 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 14th, S. 20º 22' 06" E., a distance of 265.90 feet a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 15th, S. 22º 37' 56" E., a distance of 137.48 feet to a 1/2-inch iron pipe with tag marked "PSL 6167";

Thence 16th, S. 4º 25' 19" E., a distance of 17.77 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 17th, S. 22º 15' 50" W., a distance of 15.83 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 18th, S. 37º 13' 11" W., a distance of 12.43 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 19th, S. 47º 40' 28" W., a distance of 14.42 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 20th, S. 58º 38' 26" W., a distance of 27.23 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 21st, S. 76º 54' 49" W., a distance of 170.73 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 22nd, N. 78º 16' 07" W., a distance of 1441.00 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 23rd, S. 25º 58' 01" W., a distance of 449.87 feet to a 1/2-iron pipe with tag marked "PLS 6167";

Thence 24th, N. 79º 59' 39" W., a distance of 505.37 feet ot a 1/2-inch iron pipe with tag marked "PLS 616";

Thence 25th, N. 89º 15' 07" W., a distance of 793.83 feet to a 1/2-inch iron pipe with tag marked "PLS 6167";

Thence 26th, N. 25º 49' 22" W., a distance of 1468.16 feet to the point of beginning.

///

///

///

**EXHIBIT B**

**DISTRIBUTIONS UNDER THE PLAN**

**NEW DIP LOAN:**            **$1,500,000.00**

| | |
|---|---|
| Estimated Points and Fees | ($125,000.00) for DIP Financing to be paid upon sale of the Subject Property. |
| Admin Claims: Attorney's Fees | ($150,000.00) |
| ~~Global Guidance~~ Global Guidance Group, LLC | ($22,500.00) |

**Total Amount of**
**DIP Loan Available**
**to Debtor for Project**            **$1,202,500.00**

**DISTRIBUTIONS AFTER DEVELOPMENT AND SALE OF PROPERTY**

**SALE PRICE:**            **$8,000,000.00**

| | |
|---|---|
| **DIP Loan** | **($1,500,000.00)** |
| **SMI/ISC Loan** | **($1,298,000.00)** |
| ~~**GGG, LLC**~~ **Global Guidance Group, LLC** | **($9,982.50)** |
| **Interest on DIP Loan:** | **($539,550.00)** |
| **Interest Due to SMI/ISC** | **($116,820.00)** |
| **Profit:** | **$4,535,647.50** |
| **20% Profit to SMI/ISC** | **($907,129.50)** |
| **Distribution to Equity Interest** | **$3,628,518.00** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

24

24

25

26

27

28

**<u>EXHIBIT C</u>**

**OPERATING AGREEMENT**

**SEE CLEAN COPY OF AMENDED THIRD PLAN OF REORGANIZATION**