Steven L. Yarmy, Esq.
Nevada Bar No. 8733
2595 S. Torrey Pines Drive
Las Vegas, Nevada 89146
(702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com
*Attorney for the Debtors*
 *and  Debtors-in-Possession*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| IN THE MATTER OF: | Case No.:  14-13482-abl |
| NATIVE ENERGY FARMS, LLC, | Chapter 11 |
| Debtor | **Hearing date:**  June 3, 2015<br>**Hearing time:**  1:30 p.m.<br>**Location:** 300 Las Vegas Blvd. South, 3rd Floor, Court Room 1, Las Vegas, Nevada<br>**Judge:** Honorable Judge August B. Landis. |

## <u>AMENDED THIRD MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION</u>

NATIVE ENERGY FARMS, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), hereby submits this memorandum of law in support of an order (I) Amended Third Plan of Reorganization Under Chapter 11 of Bankruptcy Code dated June 26, 2014 (the "Plan"). The Disclosure Statement, the Solicitation Procedures (as defined below) and the vote tabulation satisfy the requirements of sections 1125 and 1126(b) of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") and Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Furthermore, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. Accordingly, the Debtor respectfully submits that the Plan should be confirmed

# I. STATEMENT OF FACTS

**A.**     **General Background of the Chapter 11 Case**

The Debtor respectfully refers this Court to the Disclosure Statement (Docket No. 41), the 2nd Amended Plan (Docket No. 74), and the entire record of this Chapter 11 case for an overview of the Debtor and all other relevant facts that may bear on confirmation of the Plan.

**B.**     **The Plan and Solicitation of Votes Thereon**

On March 7, 2014, the Debtor commenced the Solicitation of votes to accept or reject the Plan. Specifically, the Debtor caused the distribution of copies of the Disclosure Statement, the Plan and the Ballots (as defined below) (collectively, the "Solicitation Materials") to each person or entity (or to its applicable nominee) that was a holder of record (a "Holder") as of March 7, 2014 (the "Voting Record Date") as follows: (i) Class 1 - SMI/ISC Unsecured Claim to Secured Claim; (ii) Class 2 – General Unsecured Claims; (iii) Class 3 – Equity Interest; and (iv) Class 4 – Post Confirmation DIP Lender Claim.

Initially, the Debtor established April 30, 2014 at 5:00 p.m., prevailing Pacific time, as the deadline (the "Voting Deadline") by which acceptances and rejections of the Plan needed to be received (either physically or in pdf format via email) by Steven L. Yarmy, Esq. (the "Voting Agent") in order to be counted. See Declaration of Steven L. Yarmy, Esq at (Docket No. 7).

The Debtor did not solicit votes to accept or reject the Plan from Holders of Claims or Interests classified in Classes 3 and 4, because each of which was deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code because they are unimpaired.

The only Holders of Claims or Interests entitled to vote to accept or reject the Plan pursuant to the provisions of the Bankruptcy Code were (i) Holders of Class 1, and (ii) Holders of Class 2. On May 16, 2014, the Voting Agent prepared the Voting Declaration confirming the results of the

Solicitation. Specifically, 100% in amount and 100% in number of Impaired Claims and Interests that were entitled to vote to accept or reject the Plan, voted to accept the Plan. See Voting declaration at Docket No. 7.

The Plan was conditional approved. See Order at Docket 61.

**C.** __Procedural History__

On May 16, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On May 16, 2014, the Debtor filed, among other pleadings, the Plan, the Disclosure Statement, the Voting Declaration and the Scheduling Motion (the Scheduling Motion was initially filed as an Ex Parte motion and was refiled on an order shortening time on May 20, 2014 at Docket No. 20.

On May 27, 2014, this Court entered its Order Pursuant to Sections 341(e), 1125(g), 1126(b), (f) and (g), 1128, 1129(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002, 3017 and 3018 (I) Scheduling Combined Hearing to (A) Approve Disclosure Statement and (B) Confirm the Prepackaged Plan of Reorganization, (II) Approving the Solicitation and Voting Procedures, Including the Forms of Ballots, and (III) Approving Form, Manner and Sufficiency of Notice of Such Combined Hearing (Docket No. 27) (the "Scheduling Order").

Pursuant to the Scheduling Order, this Court established (i) 5:00 p.m. prevailing Pacific time on June 10, 2014 as the deadline by which objections to the Disclosure Statement or Plan were to be filed (the "Objection Deadline"), and (ii) 1:30 p.m., prevailing Eastern time on June 13, 2014, as the time and date for the hearing to consider approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing").

Pursuant to the Scheduling Order, the Debtor was required to serve a notice, substantially in the form approved as Exhibit A to the Scheduling Order (the "Notice"), of, among other things, the date set for the Combined Hearing and the Objection Deadline with respect to the approval of the

adequacy of information contained in the Disclosure Statement, the Solicitation Procedures and confirmation of the Plan, within one business day of entry of the Scheduling Order upon (i) the Office of the United States Trustee, (ii) those persons who had requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, (iii) the Interested Parties, as such term is defined in the Scheduling Motion, and (iv) all other known creditors and interest holders. The Notice was duly mailed to all known creditors and parties in interest in compliance with the directives set forth in the Scheduling Order.

At the Combined Hearing on June 13, 2014 the Court required the Debtor to make modifications to the Disclosure Statement and Plan and the hearing was continued to June 26, 2014. The Debtor made minor modifications to the Plan, which required a new solicitation. The Disclosure Statement was approved at the June 26, 2014 hearing.

On June 28, 2014, the Debtor mailed out a new solicitation package for voting on the modified Plan at ECF. No. 42 filed on June 26, 2014.

On July 11, 2014 the confirmation hearing was held. The Court conditional approved the confirmation. See Order conditionally approving Amended Plan of Reorganization at Docket 61.

Thereafter, in an attempt to get title insurance it was discovered that there were certain restrictions relating to Indian land encumbering the Property.

As a result of the restrictive covenants, the debtors filed an adversary complaint to quiet title and for certain declaratory relief concerning the notion that the Indian Tribes were not Federally recognized.

The Debtors prevailed on a Motion for Summary in which all relief requested in the complaint was granted. An Order granting the Motion for Summary Judgment was entered on May 1, 2014. See Docket 32 of adversary proceeding in case number 14-01131-abl.

## II. ARGUMENT

### A.    The Solicitation Procedures

The solicitation complies with *sections 1125 and 1126 of the Bankruptcy Code*, *Bankruptcy Rules 3017(d) and (e)* (that the debtor provided the impaired classes with the materials required to be provided in connection with the solicitation and the procedures used in such solicitation were adequate) and *Bankruptcy Rule 3018(b)* (that the solicitation period not be unreasonably short). Based on the facts detailed above and as demonstrated below, the Debtor has complied with *sections 1125 and 1126 of the Bankruptcy Code*, and the Solicitation Period (as defined below) was reasonable and complied with the terms *of Bankruptcy Rule 3018(b)* and the Solicitation Procedures complied with the requirements of section 1125 and *Bankruptcy Rules 3017(d) and (e)*.

### B.    The Plan Satisfies the Requirements for Confirmation Under 11 U.S.C. § 1129(a)

*Section 1129 of the Bankruptcy Code* governs confirmation of a plan of reorganization and sets forth the requirements that must be satisfied in order for a plan to be confirmed. As the proponent of the Plan, the Debtor bears the burden of establishing that all elements necessary for confirmation of the Plan under *section 1129(a) of the Bankruptcy Code* have been met by a preponderance of the evidence. *Heartland Fed. Sav. & Loan Ass'n v. Brisco Enters., Ltd., II (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993) cert. denied, 510 U.S. 992 (1993). As addressed in detail below, the Plan satisfies all of the applicable requirements of *section 1129(a) of the Bankruptcy Code*.

#### 1.    A Plan Proponent Must Show Compliance With the Provisions of the Bankruptcy Code by a Preponderance of the Evidence

As demonstrated below, the Debtor has satisfied its burden to prove by a preponderance of The evidence that the Plan complies with the applicable provisions of the Bankruptcy Code and, accordingly, the Plan should be confirmed.

2.    **The Plan Satisfies the Requirements of 11 U.S.C. § 1129(a)(1)**

*Section 1129(a)(1) of the Bankruptcy Code* requires that a plan comply "with the applicable provisions of this title." *11 U.S.C. § 1129(a)(1). Section 1129(a)(1)* has been interpreted by the courts as requiring that a plan comply with sections 1122 (governing classification of claims) and 1123 (governing the contents of a plan). See *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757(Bankr. S.D.N.Y. 1992) ("The legislative history of § 1129(a)(1) explains that this provision embodies the requirements of §§ 1122 and 1123, respectively, governing classification of claims and the contents of the Plan."); see also *Kane v Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) (noting that it is "doubtful that violations of [Bankruptcy] Code provisions unrelated to the form and content of a plan, such as voting procedures, implicate subsection 1129(a)(1) at all"), distinguished on other grounds by *In re Continental Airlines*, 203 F.3d. 203 (3d. Cir. 2000) and In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977) ("Paragraph (1) [of 1129(a)] requires that the plan comply with the applicable provisions of chapter 11, such as section[s] 1122 and 1123, governing classification and contents of [a] plan."). In brief, the Plan divides the creditor claims and equity interests into classes, placing substantially similar claims together in the same class in a rational manner. Additionally, the Plan contains all of the necessary elements required by *section 1123 of the Bankruptcy Code.*

(a)    **The Plan Satisfies the Classification Requirements of 11 U.S.C. § 1122**

*Section 1122 of the Bankruptcy Code* governs the classification of claims under a plan. This section authorizes multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to the other claims and interests in that class. Classification does not, however, require that all substantially similar claims or interests be placed in the same class. See *In*

*re Jersey City Med. Ctr.,* 817 F.2d 1055, 1061 (3d Cir. 1987) ("[W]e agree with the general view which permits the grouping of similar claims in different classes."); *Barnes v. Whelan (In re Barnes),* 689 F.2d 193, 201 (D.C. Cir. 1982) (finding section 1122 "does not require that similar groups must be grouped together, but merely that any group created must be homogenous."); Inc., 117 B.R. 471, 476 (Bankr.D. Minn.1990) ("[W]hile § 1122(a) requires that a given class in a plan of reorganization consist of substantially similar claims, all substantially similar claims need not be included in the same class."). Thus, provided there is a reasonable basis for the separation classification of claims, a plan proponent has significant flexibility in determining its classification structure. See *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs. (In re Route 37 Bus. Park Assocs.),* 987 F.2d 154, 157 (3d Cir. 1993); *Jersey City Med. Ctr.*, 817 F.2d at 1060-61.

Article 4 of the Plan classifies Claims and Interests as follows: (i) Class 1 –SMI/ISC Corporation; (ii) Class 2—General Unsecured; (iii) Class 3— Class 4—DIP Lender Claim.; and (iv) Class 4— Equity Interest

b.    **The Plan Satisfies the Requirements of 11 U.S.C. § 1123**

*Section 1123 of the Bankruptcy Code* sets forth the mandatory and permissive contents required for a plan.

i. **11 U.S.C. § 1123(a)**

(1) **Designation of Classes of Claims and Interests - 11 U.S.C. § 1123(a)(1)**

*Section 1123(a)(1) of the Bankruptcy Code* requires that a plan designate classes of claims, other than claims of a kind specified in *sections 507(a)(2), (3) or (8) of the Bankruptcy Code*. As set forth above, the Plan designates five Classes of Claims, other than those specified in *sections 507(a)(2), (3) and (8) of the Bankruptcy Code*, and one Class of Interests and, therefore, complies with *section 1123(a)(1) of the Bankruptcy Code*. The Plan does not classify administrative or priority tax claims as specified by *section 1123(a)(i)*.

(2) **The Plan Specifies Unimpaired Classes - 11 U.S.C. § 1123(a)(2)**

*Section 1123(a)(2) of the Bankruptcy Code* requires that a plan specify any class of claims or interests that is Unimpaired within the meaning of *section 1124 of the Bankruptcy Code*. The following Classes of Claims and Interests are classified as Unimpaired under the Plan:

Class 3

Class 4

By specifying the Classes of Claims or Interests that are Unimpaired under the Plan, the Plan satisfies *section 1123(a)(2) of the Bankruptcy Code*.

(3) **The Plan Adequately Specifies the Treatment of Impaired Classes - 11 U.S.C. § 1123(a)(3)**

*Section 1123(a)(3) of the Bankruptcy Code* requires that a plan specify the treatment of any class of claims or interests that is Impaired within the meaning of *section 1124 of the Bankruptcy Code*. The following Classes of Claims and Interests are classified as Impaired under the Plan:

Class 1

Class 2

The Plan specifies the consideration that each holder of a Claim or Interest in these Impaired Classes will receive under the Plan and, as a result, the Plan satisfies *section 1123(a)(3) of the Bankruptcy Code*.

*Class 2 consists of only one unsecured creditor. (Global Guidance Group, LLC who performed business consultation work on behalf of the Debtor.*

(4) **The Plan Provides for the Same Treatment for Claims or Interests Within the Same Class - 11 U.S.C. § 1123(a)(4)**

*Section 1123(a)(4) of the Bankruptcy Code* requires that a plan provide "the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." *11 U.S.C. § 1123(a)(4).*

Holders of Claims or Interests within the same Class have a right to equality of treatment. Article 4 of the Plan provides for equality of treatment for each Claim or Interest within a particular Class. The Plan, therefore, complies with section *1123(a)(4) of the Bankruptcy Code.*

(5) **The Plan Provides Adequate Means for its Implementation - 11 U.S.C. § 1123(a)(5)**

*Section 1123(a)(5) of the Bankruptcy Code* requires that a plan of reorganization "provide adequate means for the plan's implementation," and sets forth several examples of such means, including retention by the debtor of property of the estate, sales of the debtor's property, amending the debtor's charter or issuing securities of the debtor in exchange for claims or interests. *11 U.S.C. § 1123(a)(5).* The Plan contains adequate means for its implementation because the Plan provides, among other things, for:

> (i) the continued corporate existence of the Debtor and the vesting of assets in the Reorganized Debtor;

> (ii) the a senior secured new DIP Loan from Golden Bear Capital; and SMI/ISC to receive a second deed of trust and 20% of the profits from the sale of the property;

> (iii) that this Court to retain jurisdiction over certain matters related to the Plan and this chapter 11 case.

These detailed extensive provisions for the implementation of the Plan, together with other provisions for implementation contained in the Plan, comply with section *1123(a)(5) of the Bankruptcy Code*

(6) **11 U.S.C. § 1123(a)(6) is Inapplicable.**

See Article 5.6 of the Plan

(7) **The Plan Contains Appropriate Provisions with Respect to the Selection of PostConfirmation - 11 U.S.C. § 1123(a)(7)**

*Section 1123(a)(7) of the Bankruptcy Code* provides that a plan may "contain only provisions

that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." *11 U.S.C. § 1123(a)(7).*

Article 5.3 of the Plan provides that the Debtor's current members will continue as the management of the Reorganized Debtor.

Consequently, the requirements of *section 1123(a)(7) of the Bankruptcy Code* have been met. As set forth above, the Plan satisfies the seven mandatory plan requirements contained in *Section 1123(a) of the Bankruptcy Code.*

### ii. **11 U.S.C. § 1123(b)**

*Section 1123(b) of the Bankruptcy Code* allows a plan to include a variety of provisions, including any "provision not inconsistent with the applicable provisions" of *the Bankruptcy Code. 11 U.S.C. § 1123(b)(6).* All the provisions of the Plan are consistent with *section 1123(b) of the Bankruptcy Code.*

### (1) **The Retention of this Court's Jurisdiction Is Permitted by 11 U.S.C. § 1123(b)**

The post-confirmation retention of jurisdiction by the Bankruptcy Court is permitted by the Bankruptcy Code. *Section 1141 of the Bankruptcy Code*, which deals with the consequences of confirmation, says nothing about reducing the court's jurisdiction. The court therefore retains jurisdiction under its general statutory grants of jurisdiction to the extent those grants remain relevant post confirmation. Case law also establishes that the court may retain jurisdiction over the debtor or the property of the estate following confirmation. *Gruen Mktg. Corp. v. Asia Commercial Co.* (In re Jewelcor Inc.), 150 B.R. 580, 582 (Bankr. M.D. Pa. 1992) ("There is no doubt that the bankruptcy court's jurisdiction continues post confirmation to protect its confirmation decree, to prevent interference with the execution of the plan and to aid otherwise in its operation.") (citations omitted).

Under Article 10 of the Plan, this Court retains jurisdiction over the allowance and classification of all Claims, the distribution process, matters related to the assumption or rejection of executory contracts and unexpired leases, and any disputes that arise under the Plan. All of the matters outlined in Article 10 of the Plan are matters over which this Court otherwise would have jurisdiction during the pendency of this chapter 11 case. See *28 U.S.C. §§ 157 & 1334. Section 1142(a) of the Code* provides that:

> *Notwithstanding any otherwise applicable nonbankruptcy law, rule or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any order of the court (emphasis added).*

This provision generally authorizes the Bankruptcy Court to retain post-confirmation jurisdiction over the debtor and its creditors. Article X of the Plan generally permits the Court to enforce and interpret the Plan, to entertain pending lawsuits, to insure that distributions under the Plan are carried out, to resolve cases or controversies with respect to claims against the debtor, to enter and enforce injunctions issued under the Plan, to allow or determine fees and professional compensation sought from the estate for periods preceding the Effective Date, and to enter final decrees. All of these jurisdictional powers are well-recognized in the case law interpreting *section 1142 of the Code*. The continuing jurisdiction of this Court, as provided in Article X of the Plan, is appropriate, necessary and wholly consistent with applicable law.

(2) **The Other Permissive Provisions in the Plan, including Release and Exculpation Provisions, are Reasonable and Appropriate**

All other provisions of the Plan, including the assumption of certain executory contracts (expressly permitted by *section 1123(b)(2) of the Bankruptcy Code*), the issuance of the New membership units if needed, and the New Senior Secured DIP Loan, the Debtor's retention of the

existing Organizational Documents and the impairment and nonimpairment of Classes, are

permissible Plan provisions pursuant to *section 1123(b) of the Bankruptcy Code.* Moreover, the

Debtor's ability to settle claims under *Rule 9019* and pay fees related thereto, as well as to enter into

new contracts in connection with the implementation of the Plan, is appropriate and authorized under

*section 1123(b) of the Bankruptcy Code.*

Article 5.8 and 5.9 of the Plan provides, in relevant part, for a release by the Debtor of all

current officers and directors of the Debtor, Reorganized Debtor, Plan Sponsors and each of their

respective representatives (collectively, the "Releasees"), from any and all claims and causes of

action existing as of the Effective date arising from or related in any way to the Debtor. The Debtor

has determined that a release of the Releasees is a necessary component of the reorganization.

In *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000), the Court of Appeals for the Third

Circuit held that a plan may provide for the release of a third party if such release is fair and

necessary to the reorganization and supported by specific factual findings. Courts generally consider

the following factors when analyzing debtor releases of third parties as part of a plan:

an identity of interest between the debtor and the third party, such that a suit against the

nondebtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2)

substantial contribution by the non-debtor of assets to the reorganization; (3) the essential

nature of the injunction to the extent that, without the injunction, there is little likelihood of

success; (4) an agreement by a substantial majority of creditors to support the injunction,

specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan; and

(5) provision in the plan for payment of all or substantially all of the claims of the class or

classes affected by the injunction.

*In re Zenith Elecs. Corp.,* 241 B.R. 92, 110 (Bankr. D. Del. 1999) citing *In re Master Mortgage Inv.*

*Fund, Inc.,* 168 B.R. 930, 937-38 (Bankr. W.D. Mo. 1994). The courts balance these five factors; they are not "a list of conjunctive requirements." *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. at 935.

The facts of this case clearly support the Debtor's release of the Releasees. First, there is an identity of interests between the Debtor and certain of the Releasees because a suit against any the Debtor's directors and officers, for example, for alleged liability for actions related to the Debtor's reorganization would necessarily implicate the Debtor, regardless of whether the Debtor initiated such a suit or one was instituted on a derivative basis. Clearly, any such suit and the Debtor's involvement therein would unnecessarily deplete the assets of the Debtor's estate.

Second, the Releasees have made substantial contributions to the Debtor's reorganization efforts. The directors and officers, as well as the other advisors and attorneys of the Debtor and the Plan Sponsors, have been critical in designing and implementing and negotiating the Plan. Third, the Releases are essential to the reorganization. A release of the directors and officers and other Releasees is necessary to ensure that these key individuals remain focused on the Reorganized Debtor's continuing business efforts rather than on personal litigation issues related to the Debtor that may arise after confirmation. Fourth, all impaired creditors have voted in favor of the Plan. *See Master Mortgage*, 168 B.R. at 938 (finding this factor to be "the single most important factor" in determining whether to allow releases of non-debtor entities). Finally, the Plan provides for the payment of the claims of the Classes affected by the releases, consistent with the rules of the Bankruptcy Code.Accordingly, the Debtor's releases of the Releasees should be approved.

In addition, the exculpation provisions of Article 13.5 of the Plan are consistent with bankruptcy law. *See In re PWS Holding Corp.*, 228 F.3d. 224, 247 (3d Cir. 2000) (upholding release provisions). Article IX.C of the Plan also contains an exculpation provision (the "Exculpation Provision") which exculpates, in relevant part, all current and former officers and directors of the

Debtor, Reorganized Debtor, Plan Sponsors and each of their respective representatives (collectively, the "Exculpated Parties") from liability for acts or omissions in connection with, or arising out of, the negotiation and the administration of the Plan. As discussed above, the Court of Appeals for the Third Circuit has held that a plan may provide for the release of a third party if such release is fair and necessary to the reorganization plan and supported by specific factual findings. *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000).

Furthermore, in applying the *In re Continental Airlines* standard, the Third Circuit has noted that although § 524(e) provides that the bankruptcy discharge of a debtor does not operate to relieve non-debtors of their liabilities, it does not, by its terms, govern provisions in a plan by which a debtor releases its own claims against third parties. *In re PWS Holding Corp.*, 228 F.3d 224, 245, n.21 (3d Cir. 2000).

In *PWS Holding Corp.*, the Court of Appeals for the Third Circuit reasoned that *section 524(e)* is not a "per se rule barring any provision in a reorganization plan limiting the liability of third parties." Id. at 246; see also *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 603 (Bankr. D. Del. 2001) (finding non-consensual releases of third parties may be approved if "a sufficient factual basis for both necessity and fairness are provided"). The Court relied on the general interpretation of section 1103(c)(5), which grants statutory committees broad authority to formulate a plan and perform "such other services as are in the interests of those represented" as implying "both a fiduciary duty to committee constituents and a limited grant of immunity to committee members." *In re PWS Holding Corp.*, 228 F.3d at 246. The Court held that such limited grant of immunity covers committee members for actions within the scope of their duties. Id. at 247. In so holding, the Court agreed with the holding in Pan Am Corp. v. Delta Air Lines, Inc., where "it was held that committee members and those professionals who provide services to the debtor with respect to reorganization, or to the committee members in their capacity as committee members … do remain liable for willful

misconduct or ultra vires acts." *Pan Am Corp. v. Delta Air Lines, Inc.,* 175 B.R. 438, 514 (S.D.N.Y. 1994).

Although *PWS* directly related to releases of Committee members, courts have applied the same standard to other parties involved in a chapter 11 case. See e.g., *In re United Artists Theatre Company*, 315 F.3d 217 (3d Cir. 2003) (approving release of debtor's financial advisor); *In re Western Asbestos Co.*, 313 B.R. 832 (Bankr. N.D. Cal. 2003) (approving release of all plan proponents and their professionals). *In In re Western Asbestos Co.*, 313 B.R. 832, 848 (Bankr. N.D. Cal. 2003), the court approved the release for prepetition acts, in addition to post-petition acts, because the Plan Proponents in that case "were clearly engaged in negotiating the settlement upon which the Plan is based and in preparing for the bankruptcy filing in a variety of other ways long before the cases were filed." Id. The court noted that the release must be limited to prepetition acts or omissions in connection with the settlement negotiations or the preparation for the bankruptcy filing. *Id.* Accordingly, exculpation provisions freeing parties and professionals from third party claims arising out of their involvement in a debtor's reorganization efforts are permissible so long as they are restricted to the applicable standard of the duty owed to the estate by that party or professional.

Under the Exculpation Provision, the Exculpated Parties remain liable for willful misconduct or gross negligence, which is merely a restatement of the standard of liability under applicable law. Furthermore, as in Western Asbestos, the Exculpation Provision is limited to the Exculpated Parties' involvement in the Plan and the restructuring of the Debtor. Each of the Exculpated Parties was involved, to some degree, in the negotiations and efforts that ultimately resulted in the consensual Plan. The substantial contributions of each of the Exculpated Parties to the success of the Debtor's reorganization cannot be questioned. The unanimous support of the Plan by all impaired Classes of creditors is the direct result of the many months of extensive negotiations and sacrifices on the part of the Exculpated Parties. Without the Exculpation Provision, it is unlikely that the Exculpated

Parties would have participated in the extensive efforts that resulted in a consensual Plan. Furthermore, the creditors affected by the Exculpation Provision have voted unanimously in favor of the Plan; effectively endorsing it. Based on the foregoing, the Exculpation Provision is "fair and necessary to the reorganization plan" under the standard articulated by the Third Circuit and should be approved.

(3) __The Debtor, as the Plan's Proponent, Has Complied with 11 U.S.C. § 1129(a)(2)__

*Section 1129(a)(2) of the Bankruptcy Code* requires that the proponent of a plan comply "with the applicable provisions of this title." *11 U.S.C. § 1129(a)(2).* Whereas *section 1129(a)(1)* of the Bankruptcy Code focuses on the form and content of a plan itself, *section 1129(a)(2)* is concerned with the applicable activities of a plan proponent under the Bankruptcy Code. See *7 Collier on Bankruptcy ¶ 1129.03[2].* In determining whether a plan proponent has complied with this section, courts focus on whether the disclosure and solicitation requirements of sections 1125 and 1126 have been adhered to. See *In re PWS Holding Corp.*, 228 F.3d. at 248; In re Resorts Int'l Inc., 145 B.R. 412, 468-69 (Bankr. D.N.J. 1990) (applying *section 1129(a)(2)* only to disclosure requirements of Bankruptcy Code); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code."), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom. *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); see also H.*R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977)* (providing *section 1129(a)(2)* "requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"). For the reasons detailed in sections II.A., II.B., and II.C. of this Memorandum, the Debtor submits that it has complied with the provisions of section 1129(a)(2).

(4) __The Plan Has Been Proposed in Good Faith and Not By Any Means Forbidden By Law - 11__

**U.S.C. § 1129(a)(3)**

Section 1129(a)(3) of the Bankruptcy Code requires a plan proponent to propose a plan "in good faith and not by any means forbidden by law." *11 U.S.C. § 1129(a)(3).* In determining good faith under *section 1129(a)(3),* courts address whether the proposed plan is consistent with the objectives of the Bankruptcy Code. See *In re PWS Holding Corp*., 228 F.3d. at 242 ("[F]or purposes of determining good faith under *section 1129(a)(3)* … the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code") (citations omitted); *In re Madison Hotel Assocs*., 749 F.2d 410, 425 (7th Cir. 1984); *Hanson v. First Bank of South Dakota*, 828 F.2d. 1310, 1315 (8th Cir. 1987) (finding that a plan will be considered to have been proposed in good faith "if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code"); *In re PPI Enters.* (U.S.) Inc., 228 B.R. 339, 347 (Bankr. D. Del. 1998) (same); *In re Toy & Sports Warehouse, Inc*., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) (same). Good faith is to be viewed in light of the particular facts and the circumstances of the case. See *In re NII Holdings, Inc.,* 288 B.R. 356, 362 (Bankr. D. Del. 2002) (examining the totality of the circumstances surrounding the formulation of a plan to determine good faith*); In re PPI Enters*., 228 B.R. at 347 (describing the good faith test as "testing only whether the debtor's conduct in formulating, proposing, and confirming a plan displays the requisite honesty of intention.") (citations omitted*); In re Century Glove, Inc.,* Case No. 90-400, 1993 U.S. Dist. LEXIS 2286, at *15 (D. Del. Feb. 10, 1993) (noting the "requirement of good faith must be viewed in light of the totality of circumstances surrounding establishment of a chapter 11 plan") (citations omitted).

The Debtor has met the good faith obligation imposed upon it under the Bankruptcy Code. The Plan is the culmination of significant arm's-length negotiations among the Debtor, and the key

constituents and is proposed with the purpose of reorganizing the Debtor's obligations provided for in the Plan and allowing more time to succeed in its once failed project to a more realistic project. As noted in the Confirmation Declaration and the Disclosure Statement at Section II.B, the Debtor filed this case to resolve the following issues:

• The maturity of $1.1 million principal amount to SMI/ISC;

• The need for additional funding for the Debtor's small development project to build two houses and split the property;

The Plan when confirmed will address and resolve each of the foregoing critical business issues. The Debtor has, therefore, fulfilled its obligations under section *1129(a)(3) of the Bankruptcy Code.*

**(5) The Plan Provides for Court Approval of Payment for Services and Expenses - 11 U.S.C. § 1129(a)(4)**

*Section 1129(a)(4) of the Bankruptcy Code* provides:

Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and case and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

*11 U.S.C.§ 1129(a)(4).* To date, all such payments have been approved by or are subject to the approval of this Court. Article 2.4 of the Plan expressly retains this Court's jurisdiction to "grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date." Accordingly, the Plan complies with *section 1129(a)(4) of the Bankruptcy Code.*

**(6) Section 1129(a)(5) Has Been Satisfied Because All Necessary Information Regarding Directors and Officers of the Debtor Under the Plan Will Be Disclosed - 11 U.S.C. § 1129(a)(5)**

*Sections 1129(a)(5)(A)(i) and (ii) of the Bankruptcy Code* require that a plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy." *11 U.S.C. §§ 1129(a)(5)(A)(i), (ii). Section 1129(a)(5)(B) of the Bankruptcy Code* further requires that a plan proponent disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." *11 U.S.C. § 1129(a)(5)(B).*

Pursuant to *section 1129(a)(5) of the Bankruptcy Code*, the identity and affiliations of each proposed member of the reorganized Debtor have been disclosed in the Disclosure Statement. Similarly, pursuant to Article 5.3 of the Plan, the following current officers of the Debtor (described on page 15 of the Disclosure Statement) will be the officers of the Reorganized Debtor: Shaun Martin and Kote Lotah. The appointment to, or continuation in, such office of each of the proposed directors and officers of the Reorganized Debtor is consistent with the interests of creditors, equity security holders and public policy, and thereby satisfies *section 1129(a)(5) of the Bankruptcy Code.*

## (7) The Plan Does Not Contain Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission - 11 U.S.C. § 1129(a)(6)

*Section 1129(a)(6) of the Bankruptcy Code* requires that any regulatory commission having jurisdiction over the rates charged by a reorganized debtor in the operation of its business approve any rate change provided for in the plan. *Section 1129(a)(6)* is inapplicable because the Plan does not provide for any changes in any rates subject to such regulatory approval. Having no applicability to the Plan, it follows that the requirements of *section 1129(a)(6) of the Bankruptcy Code* have been met.

(8) **The Plan Is in the Best Interests of Creditors and Equity Interest Holders - 11 U.S.C. §**
**1129(a)(7)**

*Section 1129(a)(7) of the Bankruptcy Code* codifies what is generally referred to as the "best
interests of creditors test." Section 1129(a)(7) provides:

With respect to each impaired class of claims or interests –

(A) each holder of a claim or interest of such class –

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest

property of a value, as of the effective date of the plan, that is not less than the

amount that such holder would so receive or retain if the debtor was liquidated

under chapter 7 of this title on such date.

*11 U.S.C. § 1129(a)(7). See In re Century Glove, Case No. 90-400, 1993 U.S. Dist. LEXIS 2286, at*
*\*23 (D. Del. Feb. 10, 1993); In re Jartran, Inc., 44 B.R. 331, 389-90 (Bankr. N.D. Ill. 1984).*

In order to estimate what the members of each Impaired Class of Claims or Interests would
receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code, this Court must
determine the liquidation value of the Debtor's assets and the amount and priority of the Allowed
Claims against the Debtor. Liquidation value refers to the amount that would be available if the
chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code and the debtor's
assets were liquidated by a chapter 7 trustee. *Section 1129(a)(7) of the Bankruptcy Code* specifies
that the liquidation analysis only applies to nonaccepting Impaired Claims or Interests.

In this case, all Impaired Classes of Claims and Interests have voted to accept the Plan.
Moreover, the best interests of creditors test is satisfied as to each Impaired Class of Claims and
Interests because the distributions described for the Impaired Classes of Claims and Interests are in
an amount that is not less than that which they would receive in a chapter 7 liquidation of the

Debtor's estate. Recoveries for the Impaired Classes of Claims and Interests are reflected in the liquidation analysis set forth in Exhibit A to the Disclosure Statement. A chapter 7 liquidation would decrease the ultimate proceeds available for distribution to creditors because of, among other things, (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisers to such trustee and (ii) the erosion in value of assets in the context of the liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail. The Plan, therefore, complies with *section 1129(a)(7) of the Bankruptcy Code.*

(9) **Acceptance by All Impaired Classes - 11 U.S.C. § 1129(a)(8)**

*Section 1129(a)(8) of the Bankruptcy Code* requires that each class of claims or interests that is Impaired under the plan accept the plan. Holders of Claims in Classes 1, and 2, all of the impaired Classes under the Plan, have accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code.

(10) **The Plan Provides for Payment in Full of All Allowed Priority Claims - 11 U.S.C. § 1129(a)(9)**

*Section 1129(a)(9) of the Bankruptcy Code* requires that persons holding claims entitled to priority under *section 507(a) of the Bankruptcy Code* receive specified cash payments under the plan.

In accordance with *section 1129(a)(9)(A) of the Bankruptcy Code*, Article 2 of the Plan provides that all timely filed Claims for costs and expenses of administration under *sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code*, including, but not limited to: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (ii) Accrued Professional Compensation; and (iii) all fees and charges assessed against the Estate under *chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930* (collectively, "Administrative Claims"), shall be paid the full unpaid amount of

such Allowed Administrative Claim in Cash: (a) on the Effective Date or as soon as practicable

thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as

practicable thereafter); (b) if such Claim is Allowed after the Effective Date, on the date such Claim

is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed

Administrative Claim is due); (c) at such time and upon such terms as may be agreed upon by such

holder and the Debtor or the Reorganized Debtor, as the case may be; or (d) at such time and upon

such terms as set forth in an order of the Bankruptcy Court; provided, however, that Administrative

Claims comprising obligations incurred in the ordinary course of business or otherwise assumed by

Debtor pursuant to the Plan will be assumed on the Effective Date, and thereafter, paid or performed

by the Debtor or Reorganized Debtor when due in accordance with the terms and conditions of the

particular agreements governing any such obligations. Hence, the Plan is in complete harmony with

*section 1129(a)(9).*

The priorities set forth in *subsections 507(a)(5), (6) and (7)* are not relevant to this case. The

Debtor has no defined benefit pension plans or other similarly ERISA qualified plans. The grain

production and fisherman priorities similarly are not relevant here as the Debtor is not in that type of

industry. Finally, the priority for customer deposits also is not germane to this case. The Debtor does

not collect or hold customer deposits. Accordingly, the requirements of section 1129(a)(9)(B) of the

Bankruptcy Code are satisfied.

Additionally, the Plan satisfies the requirements of *section 1129(a)(9)(C) of the Bankruptcy

Code* in respect of the treatment of all Claims against any Debtor of the kind specified in *section

507(a)(8) of the Bankruptcy Code* ("Priority Tax Claims"). Article 2 of the Plan provides that in

satisfaction of each Allowed Priority Tax Claim, each Holder thereof shall receive (i) payment in full

in Cash pursuant to *section 1129(a)(9)(C) of the Bankruptcy Code* of the unpaid portion of its

Allowed Priority Tax Claim on the Effective Date or as soon thereafter as practicable (a) of a total

value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) which total value shall include simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the later of the assessment date or the Effective Date at the rate of interest determined under applicable nonbankruptcy law pursuant to *section 511 of the Bankruptcy Code* or (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon thereafter as practicable. The Plan therefore complies with *section 1129(a)(9) of the Bankruptcy Code.*

(11) **The Plan Has Been Accepted by at Least One Impaired Class That Is Entitled to Vote - 11 U.S.C. § 1129(a)(10)**

Section 1129(a)(10) of the Bankruptcy Code requires that if a class of claims is impaired under a plan, at least one class of impaired claims must have voted to accept the plan. As described in the Voting Declaration, all Holders of Impaired Classes of Claims and Interests that were entitled to vote to accept or reject the Plan voted to accept the Plan. Accordingly, *section 1129(a)(10) of the Bankruptcy Code* is satisfied.

(12) **The Plan Is Feasible - 11 U.S.C. § 1129(a)(11)**

Section 1129(a)(11) provides that a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." *11 U.S.C. § 1129(a)(11).* As described below, the Plan is feasible within the meaning of this provision. The feasibility test set forth in *section 1129(a)(11)* requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success. See *United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990); *In re Texaco Inc.,* 84 B.R. at 910 ("All that is required is that there be reasonable assurance of commercial viability.").

*Section 1129(a)(11) of the Bankruptcy Code*, however, does not require a guarantee of the plan's success; rather, the proper standard is whether the plan offers a "reasonable prospect" of success. See *In re Danny Thomas Properties II Ltd. Partnership*, 241 F.3d 959, 963 (8th Cir. 2001) ("While a reorganization plan's success 'need not be guaranteed,' the bankruptcy court cannot approve a plan unless it has at least a reasonable prospect for success."); *In re Orlando Investors, L.P.*, 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) (requiring "reasonable assurance of compliance with plan terms"); *In re Bergman*, 585 F.2d 1171, 1179 (2d Cir. 1978) ("the probability of actual performance of the provisions of the plan…The test is whether the things which are to be done after confirmation can be done as a practical matter…").

Courts have identified a number of factors relevant to evaluating the feasibility of a proposed plan of reorganization, including: (1) the adequacy of the capital structure; (2) the prospective earnings or earning power of the debtor's business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of management; and (6) any other related matters which will determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. See *In re Leslie Fay Cos., Inc.*, and 207 B.R. at 789 citing *7 Collier on Bankruptcy¶ 1129.LH[2] at 1129-82 (15th ed., rev. 1996). The list is neither exhaustive nor exclusive. See In reDrexel Burnham Lambert Group Inc., 138 B.R. 723, 763 (Bankr. S.D.N.Y. 1992).*

The feasibility requirement is not designed to prevent confirmation of a plan that offers a reasonable likelihood of success. As noted by the Ninth Circuit Court of Appeals: "[t]he purpose of *§ 1129(a)(11)* is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Pizza of Hawaii, Inc. v. Shakey's, Inc.* (*In re Pizza of Hawaii*), 761 F.2d 1374, 1382 (9th Cir. 1985) (citation omitted); see also *In re Drexel Burnham*, 138 B.R. at 762 ("Just as speculative prospects of

success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required.").

As the Debtor has demonstrated through the participation of its creditors, the proposed Plan has more than a reasonable likelihood of success and the creditors believe in the Plan. The transactions contemplated under the Plan will enable the Debtor to continue its current operations and build two properties, which when sold offers a substantial benefit to all parties. Thus, the Plan provides for a workable scheme of reorganization, with more than a reasonable likelihood of success, and therefore satisfies section *1129(a)(11) of the Bankruptcy Code.*

(13) **The Plan Provides for Pull Payment of All Statutory Fees - 11 U.S.C. § 1129(a)(12)**

*Section 1129(a)(12) of the Bankruptcy Code* requires that certain fees listed in *28 U.S.C. § 1930* be determined by the court at the confirmation hearing and be paid on the effective date of the plan. Such fees incurred through confirmation of the Plan either have been paid by the Debtor during the pendency of this case and/or will be paid on the Effective Date. The confirmation order will require payment of all fees payable under *28 U.S.C. § 1930* on the earlier of when due or the Effective Date, or as soon thereafter as practicable. Thus, the Plan complies with *section 1129(a)(12) of the Bankruptcy Code.*

(14) **Section 11 U.S.C. § 1129(a)(13) Through 11 U.S.C. § 1129(a)(16) Are Inapplicable**

Based on the facts of this chapter 11 case, sections 1129(a)(13) through (16) of the Bankruptcy Code are not applicable.

G. **Confirmation of Plan Over Nonacceptance of Impaired Classes - 11 U.S.C. §1129(b)**

*Section 1129(b)(1) of the Bankruptcy Code* provides, in pertinent part:

[I]f all of the applicable requirements of subsection (a) of this section other than paragraph

(8) are met with respect to a plan, the court, on request of the proponent of the plan, shall

confirm the plan notwithstanding the requirements of such paragraph if the plan does not

discriminate unfairly, and is fair and equitable, with respect to each class of claims or

interests that is impaired under, and has not accepted, the plan.

*11 U.S.C. § 1129(b)(1).*

Section *1129(a)(8)* requires that each class of claims or interests either (i) has accepted the

plan or (ii) is not impaired under the plan. In this case, all Holders of Impaired Claims and Interests

have either voted unanimously to accept the Plan or did not object, and *Section 1129(b)* is therefore

inapplicable. In the event any Holder of an impaired Class of Claims and/or Interests is found to

reject the Plan, the Debtor reserves the right to establish that *Section 1129(b)* is satisfied.

## The Absolute Priority Rule

As the Court of Appeals stated, the absolute priority rule "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." 794 F.2d, at 401. The rule had its genesis in judicial construction of the undefined requirement of the early bankruptcy statute that reorganization plans be "fair and equitable." See Northern Pacific R. Co. v. Boyd, 228 U.S. 482, 504-505, 33 S.Ct. 554, 560, 57 L.Ed. 931 (1913); Louisville Trust Co. v. Louisville, N.A. & C.R. Co., 174 U.S. 674, 684, 19 S.Ct. 827, 830, 43 L.Ed. 1130 (1899). The rule has since gained express statutory force, and was incorporated into Chapter 11 of the Bankruptcy Code adopted in 1978. See 11 U.S.C. § 1129(b)(2)(B)(ii) (1982 ed., Supp. IV). Under current law, no Chapter 11 reorganization plan can be confirmed over the creditors' legitimate objections (absent certain conditions not relevant here) if it fails to comply with the absolute priority rule. *NORWEST BANK WORTHINGTON v. AHLERS 108* S.Ct., 963 Supreme Court of the United States.

## 11 U.S. Code § 1129 (b)(2)(B)(ii)

**(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.**

In the present case, there are no dissenting classes. The Debtor has not received any objections from any creditors. All creditors under the Amended Third Plan of Reorganization are being paid in full.

**Class 1** (Secured Class) consists of SMI/ISC, Corp. SMI/ISC, Corp is impaired and entitled to Vote. There are no other secured creditors.

**Class 2** (General Unsecured Claims) consists of Global Guidance Group, LLC. SMI/ISC, Corp is impaired and entitled to Vote. There are no other unsecured creditors.

Class 1 and Class 2 are they only impaired classes under the plan entitled to vote.

All senior classes of creditors have voted (accepted) for the Plan of Reorganization. **See Docket 86** Amended Declaration Of: Steven L. Yarmy, Esq. CERTIFYING VOTING ON AND TABULATION OF BALLOTS ACCEPTING AND REJECTING THE DEBTORS PREPACKAGED PLAN OF REORGANIZATION

All unsecured creditors are being paid in full. The Debtor's plan proposes to pay Debtor's only unsecured creditor Global Guidance Group, LLC in full.

For the foregoing, the Debtor submits that it has satisfied the Absolute Priority Rule in that it does not apply because there are no junior claims receiving funds under the plan over a dissenting class of unsecured creditors.

### III. CONCLUSION

For the foregoing reasons, the Debtor respectfully submits that this Court should enter an order (I) approving (A) the solicitation and voting procedures and vote tabulation, (II) confirming the Amended Plan and (III) granting the Debtor such other and further relief as is just and proper.

///

///

///

Dated: June 2, 2015

**/s/ Steven L. Yarmy**
Steven L. Yarmy, Esq.
sly@stevenyarmylaw.com
Attorney for Debtor