_____

Honorable August B. Landis
United States Bankruptcy Judge

Entered on Docket
August 25, 2015

Steven L. Yarmy, Esq.
Nevada Bar No. 8733
2595 S. Torrey Pines Drive
Las Vegas, Nevada 89146
(702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com;
admin@yarmylaw.com
Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

NATIVE ENERGY FARMS, LLC,

Debtor(s)

Case No.: 14-13482-ABL

Chapter 11

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL ORDER CONFIRMING AMENDED THIRD PLAN OF REORGANIZATION**

Hearing Date: June 3, 2015
Hearing Time: 1:30 p.m.

NATIVE ENERGY FARMS, LLC, Debtor and Debtor-in-possession in the above-referenced Chapter 11 Bankruptcy proceeding, by and through its attorney, STEVEN L. YARMY, ESQ, moved this Court on proper notice for an order approving Debtor's Amended Third Plan of Reorganization of NATIVE ENERGY FARMS, LLC filed herein on June 2, 2015, Dk. No. 93 Redline Version and [Dkt. No. 94 Clean Copy] (collectively the "Amended Plan").

The Court having read the pleadings, listened to the arguments of the parties, having reviewed its previous notes and findings from previous hearings and having put its findings of fact and conclusions of law on the record in open court, including the incorporation of earlier findings and conclusions from earlier hearings, pursuant to Federal Rule of Civil Procedure 52 made applicable by Federal Rule of Bankruptcy Procedure 7052, and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:

**I.      FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

**A.      Jurisdiction and Venue**

1.      Beginning on the Petition Date, May 16, 2014, the Debtor commenced the Chapter 11 Case. Venue in the Bankruptcy Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during the Chapter 11 Case. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and shall be confirmed.

**B.      Eligibility for Relief**

2.      The Debtor was and is an entity eligible for the relief under section 109 of the Bankruptcy Code.

**C.      Commencement of the Chapter 11 Case**

3.      Beginning on the Petition Date, the Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtor continues in possession of its property and continues to operate and maintain its business and property as debtor in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Chapter 11 Case.

**D.    Judicial Notice**

4.    The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court and/or its duly appointed agent (the "Docket"), including, without limitation, all pleadings and other documents on file, all orders entered, and all evidence (that was not subsequently withdrawn) and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

**E.    Burden of Proof**

5.    The Debtor, the Proponent of the Amended Plan (a) has satisfied its burden of proving the elements of section 1129(a) of the Bankruptcy Code by the applicable evidentiary standard for Confirmation, and (b) has proven the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence.

**F.    Disclosure Statement Order**

6.    The Debtor's Disclosure Statement (the "Disclosure Statement"), referring to the Plan, was **approved** by the Court pursuant to an order entered on July 1, 2014 at [Dkt. No. 52].

**G.    Transmittal and Mailing of Materials; Notice**

7.    As evidenced by the Confirmation Hearing Notice [Dkt. No. 75], the Solicitation Package Certificate of Service, Certificate of Service [Dkt. No. 78 & 79], due, adequate, and sufficient notice of the Disclosure Statement, Plan, and Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, as applicable, has been given to (a) all known Holders of Claims and Old Equity Interests, (b) entities that properly requested notice (and did not withdraw such request) in accordance with Bankruptcy Rule 2002, (c) the Office of the United States Trustee for the District of Nevada, (d) the Internal Revenue Service, (e) the Securities and Exchange Commission, (f)

the U.S. Attorney for the District of Nevada, and (g) those additional federal and state governmental entities and units listed in the Register of Mailing Addresses of Federal and State Governmental Units kept by the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 5003(e) and Local Bankruptcy Rule 5003(c), each in compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017 and 3020(b), and no other or further notice is or shall be necessary or required.

8.      Notice of the hearing on confirmation of the Plan was proper and appropriate as was notice of the deadlines for filing objections to the Plan and for the submission of Ballots with respect to the Plan.

9.      The Plan divides the claims of creditors and interest holders into four (4) classes. Only classes of creditors and interest holders with claims or interests impaired under a plan of reorganization are entitled to vote on a plan. The Classes of creditors not impaired under the Plan are Classes 3 and 4. Classes 1 and 2 are impaired under the Plan and the members of these impaired classes were entitled to vote to accept or reject the Plan. In accordance with an order of the Court entered on June 27, 2014, in order to be counted, Ballots with respect to the Plan completed by members of Classes 1 and 2 had to be received by counsel for the Debtor no later than July 10, 2014.

**H.      Solicitation**

10.      As evidenced by the Confirmation Hearing Notice [Dkt. No. 48], the Solicitation Package Certificate of Service, Certificate of Service [Dkt. No. 78 & 79], due, adequate, and sufficient notice of the Disclosure Statement, Plan, and Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, as applicable, has been given to (a) all known Holders of Claims and Old Equity Interests or Interest, (b) entities that properly requested notice (and did not withdraw such request) in accordance with Bankruptcy Rule 2002, (c) the Office of the United States Trustee for the District of Nevada, (d) the Internal Revenue Service, (e) the Securities and Exchange Commission, (f) the U.S. Attorney for the District of Nevada, and (g) those additional federal and state

governmental entities and units listed in the Register of Mailing Addresses of Federal and State Governmental Units kept by the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 5003(e) and Local Bankruptcy Rule 5003(c), each in compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017 and 3020(b), and no other or further notice is or shall be necessary or required

11.    Under section 1126(c) of the Bankruptcy Code an impaired class of claims is deemed to have accepted the Plan if class members holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of all allowed claims of class members actually voting have voted in favor of the Plan. Under section 1126(d) of the Bankruptcy Code, an impaired class of interests is deemed to have accepted the Plan if class members holding at least two-thirds (2/3) in amount of the allowed interests of class members actually voting have voted in favor of the Plan.

12.    Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws and regulations. Specifically, the Solicitation Packages approved by the Bankruptcy Court in the Disclosure Statement Order, which contained, among other things, the applicable Ballot, the Disclosure Statement Order, and the Disclosure Statement together with the Plan, were transmitted to and served on all Holders of Claims in Classes that were entitled to vote to accept or reject the Plan, as set forth in the Solicitation Package Certificate of Service [Dkt. No. 50]. The transmittal and service of the Solicitation Packages described herein was in compliance with section 1125 of the Bankruptcy Code, the Disclosure Statement Order, the Solicitation Procedures, and the Bankruptcy Rules. Such transmittal and service were adequate and sufficient, and no further notice is necessary or required or shall be required.

13. All processes and procedures used to distribute Solicitation Packages to Holders of Claims in Classes that were entitled to vote on the Plan were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

**H.    Ballot Summary**

14. Prior to the Confirmation Hearing, the Debtor filed the Ballot Summary. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Solicitation Procedures, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

15. No objections to confirmation of the Plan were timely filed and the Debtor has not received any objections to confirmation.

16. All ballots received were in favor of the Plan. Specifically, of two (2) votes timely received, both votes were in favor of the Plan. The classes under the Plan entitled to vote were Classes 1 (secured) and 2 (unsecured creditor) . Of the members of Class 1 voting on the Plan, one (1) vote from SMI/ISC Corp. asserting a claim in the amount of $1,298,000.00 voted in favor of the Plan. Of the members of Class 2 voting on the Plan, no votes either accepting or rejecting to the plan were received.

17. As evidenced by the Ballot Summary [Dkt. No. 84], Holders of Claims in Class 1 voted to accept the Plan.

**I.    Bankruptcy Rule 3016**

18. The Amended Plan is dated and identifies the entities submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

**J.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

19.      Bankruptcy Code section 1129 contains the standards for confirmation of a plan under chapter 11. See 11 U.S.C. § 1129, see *In re Sound Radio, Inc.*, 93 B.R. 849, 852 (Bankr. D.N.J. 1988); *In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988).

20.      When a plan of reorganization satisfies each of the requirements contained in section 1129(a), the court shall confirm the plan without considering section 1129(b). *See11 U.S.C. §§ 1129(a)* and *(b)*; *In re Texaco Inc.*, 84 B.R. at 910. Specifically, section 1129(b) only applies if a class whose claims or interests are impaired does not accept the plan as required by section 1129(a)(8). 7 *Collier on Bankruptcy, ¶ 1129.03[8]*, p. 1129-54 (Matthew Bender 16th Edition). Moreover, a plan of reorganization need only satisfy the requirements of section 1129(b) with respect to classes that voted against the plan. *In re Johns-Manville Corp.*, 843 F.2d at 650. In this case, all impaired classes have voted in favor of the Plan.

21.      Bankruptcy Code section 1129(a)(1) permits the court to confirm a plan only if the plan complies with the applicable provisions of title 11, United States Code (the "Bankruptcy Code"). 11 U.S.C. § 1129(a)(1); see *Kane v. Johns-Manville Corp.*, 843 F.2d at 648-49; *In re Texaco Inc.*, 84 B.R. 893 at 903, 905; *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984). Bankruptcy Code sections 1122 and 1123. See *Kane v. Johns-Manville Corp.*, 843 F.2d at 648-49; *In re Texaco Inc.*, 84 B.R. 893, at 903, 905; *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984); 7 Collier on Bankruptcy, ¶ 1129.02, p. 1129-17 (15th Ed. 1993). Section 1122 governs classification of claims and interests and section 1123 sets forth the provisions that are required to be included, and those that may be included, in a plan of reorganization. 11 U.S.C. §§ 1122 and 1123.

22.      The Plan Complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**1.      Section 1129(a)(1)-Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

23.      As set forth below, the Plan complies with all applicable provisions of the Bankruptcy Code, including Sections 1122 and 1123 of the Bankruptcy Code, thus satisfying sections 1129(a)(1) of the Bankruptcy Code.

**(i)      *Sections 1122 and 1123(a)(1)-Proper Classification***

24.      Bankruptcy Code section 1123(a)(1) requires that a plan designate, subject to Bankruptcy Code section 1122, classes of claims, other than claims of kind specified in sections 507(a)(2) (administrative expenses), 507(a)(3) (involuntary case gap claims), or 507(a)(3) (certain unsecured tax claims) and classes of interests. 11 U.S.C. § 1123(a)(1). In designating Classes 1 through 4 in Article 3 of the Plan, the Debtor has satisfied the requirement of 11 U.S.C. § 1123(a)(1).

25.      In the Plan, the Debtor has appropriately not sought to classify section 507(a)(2) and (8) priority claims. Article 2 of the Plan sets forth the treatment of "Administrative Expenses and Unclassified Claims". The designation of such claims under the Plan is in accordance with section 1123(a)(1).

26.      *Bankruptcy Code section 1122(a)* does not require that similar claims necessarily be placed in the same class. 11 U.S.C. § 1122(a); *see Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1313 (8th Cir. 1987); *Matter of Jersey City Medical Center,* 817 F.2d 1055, 1061 (3rd Cir. 1987); *Teamsters Nat'l Freight Industry Negotiating Committee v. U.S. Truck Co. (In re U.S. Truck Co.),* 800 F.2d 581, 584-87 (6th Cir. 1986); *In re Meadow Glen, Ltd.,* 87 B.R. 421, 424-26 (Bankr. W.D. Tex. 1988); *In re Texaco Inc.,* 84 B.R. 893, 905; *In re Ag Consultants Grain Div., Inc.,* 77 B.R. 665, 671-675 (Bankr. N.D. Ind. 1987). Congress intended to afford bankruptcy judges' broad discretion to decide the propriety of plans in light of the facts of each case. *See In re U.S. Truck Co., Inc.,* 800 F.2d 581, 584-86 (6th Cir. 1986) (discussing the legislative history of section 1122).

Moreover, Congress intended that the proponent of a plan have flexibility in classifying claims. *See* 7 *Collier on Bankruptcy, ¶ 1122.04*, p. 1122-27-30 (Matthew Bender 16th Edition).

27.    Article 4 of the Plan, designating classes of claims and interests under the Plan, places only claims or interests in each particular class that are substantially similar to the other claims or interests in the class. The Plan therefore complies with section 1122(a). *See In re Texaco Inc.,* 84 B.R. 893, 905.

28.    Bankruptcy Code section 1123 describes mandatory and permissive plan provisions. 11 U.S.C. § 1123. Section 1123(a) sets forth required provisions of a plan. 11 U.S.C. § 1123(a). Section 1123(b) suggests certain discretionary plan provisions. 11 U.S.C. § 1123(b).

29.    Bankruptcy Code section 1123(a)(1) states that a plan must designate, subject to Bankruptcy Code section 1122, classes of claims, other than claims for administrative expenses (section 507(a)(2)), gap claims in involuntary cases (section 507(a)(3)), and certain unsecured tax claims (section 507(a)(8)), and classes of interests. The Plan, in Article 4, designates classes of claims and interests in accordance with section 1122. Thus, the Plan complies with section 1123(a)(1). *See In re Texaco Inc.,* 84 B.R. 893, 905.

(ii)    *Section 1123(a)(2) – Specification of Unimpaired Classes*

30.    *Bankruptcy Code section 1123(a)(2)* requires that a plan specify any class of claims or interests that is not impaired under the plan. 11 U.S.C. § 1123(a)(2). In Article 3 & 4 of the Plan, the Debtor meets this requirement by specifying the Classes that are not impaired under the Plan. *See In re Texaco Inc.,* 84 B.R. 893, 905. Classes 3 and 4 are not impaired under the Plan. The treatment of the holders of allowed claims in these unimpaired classes is set forth in Article 4 of the Plan. As a result thereof, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

(iii)    *Section 1123(a)(3) – Specification of Treatment of Impaired Classes*

31.    . Bankruptcy Code section 1123(a)(3) requires that a plan specify the treatment of any class of claims or interests that is impaired under the Plan. 11 U.S.C. § 1123(a)(3). With the exception of claims falling within Bankruptcy Code sections 507(a)(2), (a)(3) and (a)(8), every claim and interest in a chapter 11 case must be placed in a class and every class must be designated as impaired or unimpaired. *See* 11 U.S.C. §§ 1123(a)(1) and (a)(2). The Plan satisfies these requirements. Classes 1 and 2 are impaired under the Plan. If a class is impaired, section 1123(a)(3) requires that the Plan specify how the class is to be treated. Article 4 of the Plan specifies the treatment of classes of claims (Class 1) and (Class 2) that are impaired under the Plan. The discussion of the treatment of classes under the Plan contained in Article 4 satisfies the requirement of 11 U.S.C. § 1123(a)(3).

(iv)    *Section 1123(a)(4)* – Equal Treatment Within Classes

32.    Bankruptcy Code section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment. 11 U.S.C. § 1123(a)(4). Thus, once a plan has classified creditors, it must provide the same treatment for each claim or interest of a particular class, unless the holder agrees to less favorable treatment. *See Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 787 F.2d 1352, 1362-63 (9th Cir. 1986). However, section 1123(a)(4) only requires equality of treatment of claims or interests placed in the same class. *In re Acequia, Inc.*, 787 F.2d at 1363; *In re Jersey City Medical Center,* 817 F.2d 1055, 1061. The Plan provides for the same treatment for each claim or interest of a particular class. Thus, the Plan complies with 11 U.S.C. § 1123(a)(4).

(v)    *Section 1123(a)(5) – Adequate Means for Plan Implementation*

33.    Article 7 of the Plan and various other provisions of the Plan specifically provide, in sufficient detail, adequate and proper means for the implementation of the Plan, including among (i) providing the Reorganized Debtor with the amount of Cash required for a reserve fund for future tax and maintenance contingencies, (ii) paying administrative claims, (iii) the vesting of all of the property

- 10 -

of the Estate with the Reorganized Debtor (except for Properties transferred to Secured Lenders pursuant to the Plan and except as provided in the Plan or in this Confirmation Order) (Plan, §§ 7 and 13); (vi) the preservation and retention of Causes of Action by the Reorganized Debtor (Plan, §13.9). As a result thereof, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

34.    Article 5 of the Plan provides adequate means for the Plan's implementation, including the development and sale of property of the estate as suggested by 11 U.S.C. § 1123(a)(5)(D). In this case, satisfies the requirement of 11 US.C. § 1123(a)(5).

(vi)    <u>*Section 1123(a)(6) – Voting Power of Equity Securities*</u>

35.    Bankruptcy Code section 1123(a)(6) requires that a plan provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default and the payment of such dividends. 11 U.S.C. § 1123(a)(6). The Court of Appeals for the Ninth Circuit stated "§ 1123(a)(6) only prohibits the issuance of *new* non-voting securities." *In re Acequia, Inc.,* 787 F.2d 1352, 1361 (9th Cir. 1986) (emphasis not added). The Plan does not provide for the issuance of equity securities. In any event, 11 U.S.C. § 1123(a)(6) is not applicable.

(vii)    <u>*Section 1123(a)(7) – Selection of Officers and Directors*</u>

36.    Bankruptcy Code section 1123(a)(7) states that a plan shall contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director or trustee. 11 U.S.C. § 1123(a)(7). Section 1129(a)(5), which is discussed

below, augments section 1123(a)(7) and requires, as a condition of confirmation, that the proponents of the plan disclose the identity and affiliation of any individuals proposed to serve, after confirmation of the plan, as directors, officers, or voting trustees of the debtor, or of an affiliate of the debtor participating in a joint plan with the debtor, or of a successor to the debtor under the plan. In addition, section 1129(a)(5)(A)(ii) requires that the appointment or continuance of any director, officer or voting trustee be consistent with "the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1129(a)(5).

37.     Bankruptcy Code section 1123(a)(7) is not applicable in this case insofar as this case does not implicate any issues with regard to the selection of any officer, director, or trustee. There are no provisions in the Plan regarding such selection and thus there are no provisions inconsistent in that regard in the interests of creditors and equity security holders with public policy. The Plan complies with section 1123(a)(7).

(viii)    *Section 1123(b) – Discretionary Contents of the Plan*

38.     Section 1123(b) suggests certain permissive plan provisions. 11 U.S.C. § 1123(b); *see In re Texaco Inc.,* 84 B.R. 893, 906. Several of these discretionary provisions are contained in the Plan. The Plan, in Article 5 and 9 includes a number of the suggested discretionary Plan provisions set forth in *11 U.S.C. § 1123(b),* including providing for the sale of substantially all of the property of the estate in accordance with 11 U.S.C. § 1123(b)(4) before or after the development of the debtor's property, left to the debtor's discretion.

39.     Section 1123(b)(5) also permits a plan to contain "any other appropriate provision not inconsistent with the applicable provisions of this title". 11 U.S.C. § 1123(b)(5). The Plan does not contain any provision that is inconsistent with the applicable provisions of the Bankruptcy Code.

40.    The Plan complies with both section 1122 and with the mandatory and permissive provisions of section 1123. Moreover, the Plan does not violate any other applicable provision of title 11. Therefore, the Plan satisfies the requirements of section 1129(a)(1).

**2.    Section 1129(a)(2) – Compliance with the Applicable Provisions of the Bankruptcy Code**

41.    Bankruptcy Code section 1129(a)(2) states that the court shall confirm a plan only if the proponent of the plan complies with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). The principal purpose of section 1129(a)(2) is to require, as a condition of confirmation, that the court ascertain whether the proponent of the plan under consideration has complied with the requirements of section 1125 in the solicitation of acceptances of the plan. *See In re Texaco Inc., 84 B.R.* 893, 906-907, *citing In re Toy & Sports Warehouse, Inc., 3*7 B.R. 141, 149 (Bankr. S.D.N.Y. 1984). Under section 1125, a postpetition solicitation of votes on a plan is improper unless the court has approved a written disclosure statement filed with the plan. See *In re Media Cent., Inc.*, 89 B.R. 685, 688 (Bankr. E.D. Tenn. 1988). The primary purpose of a disclosure statement is to give creditors and interest holders the information they need to decide whether to accept the plan. *In re Monnier Brothers*, 755 F.2d 1336, 1342 (8th Cir. 1985). A disclosure statement need not comply with the disclosure standards of the federal securities laws. *Kirk v. Texaco, Inc.*, 82 B.R. 678, 681 (S.D.N.Y. 1988). Bankruptcy judges have broad discretion in reviewing disclosure statements and what constitutes adequate information and any particular instance will develop on a case-by-case basis. *See Kirk,* 82 B.R. 678, 682; *In re Monnier Brothers,* 755 F.2d 1336, 1342.

42.    The court approved the Disclosure Statement, finding that it contained adequate information. Thereafter, the Debtor timely mailed the Disclosure Statement and the Plan in accordance with the court's order approving the Disclosure Statement. The Debtor has complied with all other applicable provisions of title 11 and, therefore, has satisfied the requirement of section 1129(a)(2).

### 3.    Section 1123(a)(3) – Proposal of the Plan in Good Faith

43.    Bankruptcy Code section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3); see *Kane v. Johns-Manville Corp.,* 843 F.2d at 649; *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1315; *In re Sound Radio, Inc.,* 93 B.R. 849, 853 (Bankr. D.N.J. 1988); *In re Texaco Inc.,* 84 B.R. 893, 907; and *In re Future Energy Corp.,* 83 B.R. 470, 486 (Bankr. S.D. Ohio 1988). This requirement is to be read restrictively. *In re Victory Construction Co.,* 42 B.R. 145, 149 (Bankr. C.D. Cal. 1984). The term "good faith" is not specifically defined in the Code. See *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1315; *In re Madison Hotel Associates,* 749 F.2d at 424; *In re Texaco Inc.,* 84 B.R. at 907; and *In re Future Energy Corp.,* 83 B.R. at 486. However, in the context of section 1129(a)(3), some courts have interpreted "good faith" to mean that there exists "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Nite Lite Inns,* 17 B.R. 367, 370 (S.D. Cal. 1982); see *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d at 1315; *In re Madison Hotel Associates*, 749 F.2d at 425; In re Costal Cable T.V., Inc., 709 F.2d 762, 764 (1st Cir. 1983); In re Sound Radio, Inc., 84 B.R. at 853; In re Texaco Inc., 84 B.R. at 907; *In re Future Energy Corp.*, 83 B.R. 470, 486 (Bankr. S.D. Ohio 1988). Other courts have held that the good-faith test of section 1129(a)(3) requires that "the plan was proposed with honesty and good intentions and with a basis for expecting a reorganization can be effected." *Koelbl v. Glessing,* 751 F.2d 137, 139 (2nd Cir. 1984), quoting *Manati Sugar Co. v. Mock,* 75 F.2d 284, 285 (2nd Cir. 1935); see *Kane v. Johns-Manville Corp.*, 843 F.2d at 649. The court's determination of the "good faith" proposal of a plan under section 1129(a)(3) must be made in light of "the totality of the circumstances surrounding confection" of the plan. *In re Jasik*, 727 F.2d 1379, 1383 (5th Cir. 1984), citing *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983); see *In re Madison Hotel Associates*, 749 F.2d at 425; *In re Sound Radio, Inc.*, 93 B.R. 849, 853; *In re Texaco Inc.*, 84 B.R. 893, 907; and *In re Future*

*Energy Corp.,* 83 B.R. 470, 486. Because no timely objection to the Plan raising section 1129(a)(3) has been filed, the Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues. See Rule 3020(b)(2) of the Federal Rules of Bankruptcy Procedure. As a result, the requirements of section 1129(a)(3) of the Bankruptcy Code have been satisfied.

44.     The proposal of the Plan is consistent with the objectives and purposes of the Bankruptcy Code and was made with honesty and good intentions and with a basis for expecting that, under the circumstances, it was the best means for maximizing any recovery by creditors of the Debtor. Therefore, the Plan has been proposed in good faith, not by any means forbidden by law, and complies with section 1129(a)(3).

### 4.     Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as Reasonable

45.     Bankruptcy Code section 1129(a)(4) requires that any payment made or to be made by the proponent, the debtor, or by a person issuing securities, or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the court, as reasonable. 11 U.S.C. § 1129(a)(4); see *In re Texaco Inc.,* 84 B.R. 893, 907-908; *In re Future Energy Corp.,* 83 B.R. 470, 487-488; 7 Collier on Bankruptcy, ¶ 1129.03[4], p. 1129-38-39 (Matthew Bender 16th Edition). Article 2 of the Plan provides that "Professionals employed at the expense of the Estate, and any entities which may be entitled to an allowance of fees and expenses from the Estate pursuant to § 503(b)(2) through (6) of the Code, shall receive cash in the amount awarded to such professionals and entities as soon as practicable after an order is entered by the Court approving such award pursuant to Sections 330 or 503(b)(2) through (6) of the Code… ." Said procedure for review and ultimate determination by the court of the professional fees and expenses to be paid by the Debtor satisfies the

requirement of section 1129(a)(4). *See In re Sound Radio, Inc.,* 93 B.R. 849, 854; *In re Texaco Inc.,* 84 B.R. 893, 908; *In re Future Energy Corp.,* 83 B.R. at 488. "Court approval of payments for services and expenses is governed by various Code provisions—e.g., §§ 328, 329, 330, 331 and 503(b)—and need not be explicitly provided for in a Chapter 11 plan." *In re Future Energy Corp.,* 83 B.R. 470, 488. Thus, the Amended Second Plan filed on July 14, 2014 complies with section 1129(a)(4).

### 5.    Section 1129(a)(5) – Disclosure of Identity of Debtor's Management

46.    Bankruptcy Code section 1129(a)(5)(A) requires the proponents of a plan to disclose the identity and affiliations of any individual proposed to serve after confirmation as a director, officer or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor of the debtor under the plan, and requires the appointment or continuance of such individual to be consistent with the interest of creditors and equity security holders and with public policy. 11 U.S.C. § 1129(a)(5); *see In re Texaco Inc.,* 84 B.R. 893, 908. This section augments section 1123(a)(7). Section 1129(a)(5)(A) is not applicable. In this case there are not any individuals proposed to serve after confirmation as a director, officer or voting trustee of the Debtor, and there are no affiliates of the Debtor participating in the Plan. Therefore, the requirements of section 1129(a)(5)(A), to the extent applicable, have been satisfied. As discussed in Article 7.11 of the Plan, the identity of the Reorganized Debtor's management after confirmation of the Plan has been fully disclosed in the Plan and is consistent with the interest of Holders of Claims against the Debtor and public policy. Section 1129(a)(5)(B) requires the proponent of the plan to disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider. The term insider is defined in section 101(31). *See* 11 U.S.C. § 101(31). There are no insiders that are to be employed or retained by the Debtor, except that Shaun Martin and Kote Lotah will serve as the Debtor's representatives without compensation simply for purposes of facilitating

implementation of the Plan and to see the project to completion. Therefore, section 1129(a)(5)(B) is satisfied.

### 6.    Section 1129(a)(6) – Approval of Rate Changes

47.    Section 1129(a)(6) requires as a condition precedent to confirmation that any governmental regulatory entity with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval. 11 U.S.C. § 1129(a)(6). The Plan does not provide any rate change. Thus, section 1129(a)(6) does not apply.

### 7.    Section 1129(a)(7) - Best Interests of Holders of Claims and Interests

48.    . Bankruptcy Code section 1129(a)(7) sets forth the "best interest of creditors" test. 11 U.S.C. § 1129(a)(7); see *Kane v. Johns-Manville Corp.,* 843 F.2d 636, 649; *In re Texaco Inc.,* 84 B.R. 893, 908-909; *In re Victory Construction Co., Inc.,* 42 B.R. 145, 151; I*n re Toy & Sports Warehouse, Inc.,* 37 B.R. 141 Subsection 1129(a)(7) provides that with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date, not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 on such date. 11 U.S.C. § 1129(a)(7).

49.    In this case, Classes 1 has accepted the plan and 2 has is provided full payment under the Plan. The Plan provides for the most efficient and economical means of distributions of the DIP loan proceeds and the future sale proceeds of the debtor's property. Conversion of this chapter 11 case to a chapter 7 liquidation case would result in additional delay and expense and would reopen the bar date for filing claims. This would diminish the value of the Estate and make zero Proceeds available for distribution to other creditors. Accordingly, under the Plan, any recovery by creditors will exceed

that which would occur in a chapter 7 liquidation. Therefore, the Plan satisfies the "best interest of creditors" test of 11 U.S.C. § 1129(a)(7).

### 8.    Section 1129(a)(8) – Acceptance of Rejection by Certain Classes

50.    Section 1129(a)(8) requires that each class of claims or interests either accepts the plan or is not impaired under the plan. 11 U.S.C. § 1129(a)(8).

51.    Whether a class has accepted the plan is determined by reference to section 1126. 11 U.S.C. § 1126. Under section 1126(f) any class which is not impaired under the plan is conclusively presumed to have accepted the plan. 11 U.S.C. § 1126(f).

52.    Because the Plan does not impair Classes 3 and 4, each of those classes is deemed to have accepted the Plan. *See* 11 U.S.C. § 1126(f). Classes 1 and 2 are impaired under the Plan. Accordingly, the holders of allowed claims in those classes were entitled to vote on the Plan. As set forth above, the members of Classes 1 and 2 voted overwhelmingly to accept the Plan. Therefore, it is not necessary that the court consider the requirements of section 1129(b) with respect to the Plan. Moreover, because the Plan satisfies each of the requirements contained in section 1129(a), the Debtor is entitled to an order confirming the Plan.

### 9.    Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

53.    Bankruptcy Code section 1129(a)(9) states the rules applicable to payment of those unsecured claims entitled to priority in distribution in chapter 11 cases. 11 U.S.C. § 1129(a)(9). With respect to priority claims of the kind specified in Bankruptcy Code section 507(a)(2), (3), or (8), 11 U.S.C. § 1129(a)(9) constitutes the only essential confirmation requirement, since there is no reason to create a class or classes for section 507(a)(2), (3) and (8) claims in light of the fact that a majority of such classes cannot bind a minority to less favorable payment terms than those provided under section 1129(a)(9). *See* 7 *Collier on Bankruptcy, ¶ 1129.03[9]*, p. 1129-55-60 (Matthew Bender 16th Edition).

Unless the holder of such a priority claim agrees to less favorable treatment of its claim, section 1129(a)(9) requires the payment of first (section 507(a)(2)) and second (section 507(a)(3)) priority claims in full in cash on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). There are no claims against the Debtor entitled to priority under section 502(a)(3) (ordinary course of business "gap" claims in an involuntary case). Article 2 of the Plan provides for appropriate treatment of section 507(a)(2) claims in compliance with section 1129(a)(9)(A).

54.     Section 1129(a)(9)(B) requires that holders of section 507(a)(1), (4), (5), (6) or (7) priority claims receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim. 11 U.S.C. § 1129(a)(B). There are no claims against the Debtor entitled to priority under section 507(a)(6) (claims against debtors who own or operate a grain storage facility or a fish produce storage or processing facility). Under the Plan, allowed claims entitled to priority, if any, pursuant to section 507(a)(1), (4), (5), (6) and (7) are not designated as members of any Class, as set forth in Article 2 of the Plan, will be paid in full in cash on the Effective Date, or as soon thereafter as is administratively practicable, unless otherwise ordered by the court. Therefore, the treatment of such claims under the Plan satisfies the requirement of 11 U.S.C. § 1129(a)(9)(B).

55.     Section 1129(a)(9)(C) requires that holders of section 507(a)(8) priority claims receive on account of such claims deferred cash payments, over a period not exceeding six years after the date of assessment of such claims, of a value, as of the effective date of the plan, equal to the allowed amount of such claims. 11 U.S.C. § 1129(a)(9)(C). Article 2 of the Plan provides that the holders of allowed claims, if any, entitled to priority under section 507(a)(8) will be paid in full on the Effective Date or as soon thereafter as is practicable. Thus, the treatment of section 507(a)(8) claims under the

Plan complies with section 1129(a)(9)(C). *See*, *for general discussion*, *In re Camino Real Landscape Maint.Contractors,* 818 F.2d 1503 (9th Cir. 1987).

### 10.    Section 1129(a)(10) – Acceptance by at Least One Impaired Class

56.    Bankruptcy Code section 1129(a)(10) requires as a condition of confirmation that if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10); *see In re Texaco Inc.,* 84 B.R. 893, 910. As discussed above, section 1126 provides the requirements for determining acceptance. Section 1129(a)(10) requires affirmative acceptance of a plan by at least one impaired class of claims, unless all classes of claims are left unimpaired. 7 *Collier on Bankruptcy, ¶ 1129.03[10]*, p. 1129-63 (Matthew Bender 16th Edition), *citing In re Russell,* 12 B.C.D. 571. As discussed above. Classes 1 and 2 are the only impaired classes of "claims" under the Plan. The voting members of Classes 1 and 2 have voted in favor of the Plan. *See* the detail of the voting results set forth above. Therefore, the requirements of 11 U.S.C. § 1129(a)(10) are satisfied.

### 11.    Section 1129(a)(11) – Feasibility of the Plan

57.    Bankruptcy Code section 1129(a)(11) requires as a condition of confirmation that the court find that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. *11 U.S.C. § 1129(a)(11)*; *see Kane v. Johns-Manville Corp.,* 843 F.2d 636, 649; *In re Sound Radio, Inc.*, 93 B.R. at 855-56; *In re Texaco Inc.,* 84 B.R. 893, 910. The feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed. *Kane v. Johns-Manville Corp.,* 843 F.2d 636, 649; *Prudential Insurance Co. v. Monnier (In re Monnier Brothers),* 755 F.2d 1336, 1341 (8th Cir. 1985); *In re*

*American Solar King Corp.*, 90 B.R. at *832-833*; *In re Prudential Energy Corp.,* 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986).

> Guaranteed success in the stiff winds of commerce without the protection of the Code is not the standard under section 1129(a)(1). Most debtors emerge from reorganization with a significant handicap. But a plan based on impractical or visionary expectations cannot be confirmed.

*In re Prudential Energy Company, supra* 58 B.R. 857, at 862, *citing In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985); see *In re American Solar King Corp.,* 90 B.R. at 833.

58.     The Plan is viable and much more than a mere "visionary scheme" and, therefore, satisfies the feasibility requirement of section 1129(a)(11). *See In re Acequia, Inc.,* 787 F.2d 1352, 1365, *citing In re Pizza of Hawaii*, 761 F.2d at 1382 (9th Cir. 1985).

**12.     Section 1129(a)(12) – Payment of Certain Fees**

59.     Bankruptcy Code section 1129(a)(12) mandates the payment of all fees required under 28 U.S.C. § 1930, including filing fees and United States Trustee Quarterly Fees. The Debtor believes that all such fees have been paid on a current basis and that no obligations in this regard will exist on the Effective Date of the Plan. In the event that any such fees are owing on the Effective Date they would be nominal in the context of the Plan and they will be paid. Thus, the requirement of section 1129(a)(12) is satisfied.

**13.     Section 1129(a)(13) – Retiree Benefits**

60.     The Debtor is not obligated for any retiree benefits as that term is defined in section 1114. Thus, section 1129(a)(13) of the Bankruptcy Code is not applicable in this Chapter 11 Case.

**14.     Section 1129(c) – Only One Plan**

61.     Only the Plan (including all amendments thereto) has been approved for solicitation and is before the Bankruptcy Court for confirmation in this Chapter 11 Case. See [Dkt. No. 60]. As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**15.     Section 1129(d) – Principal Purpose of the Plan In Not the Avoidance of Taxes or Application of the Securities Law**

62.     No governmental unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. As a result, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**17.     Section 1129 Requirements**

63.     The Debtor has demonstrated that the Plan satisfies each of the requirements contained in section 1129(a). All classes impaired under the Plan have voted to accept the Plan. There is no need for the court to consider the requirements of section 1129(b). Therefore, the Debtor is entitled to an order of the court confirming the Plan.

**N.     Section 1125(e) – Good Faith Solicitation**

64.     Based on the record before the Court in the Chapter 11 Case, the Proponents, and their respective members, officers, directors, agents, financial advisors, attorneys, advisors, employees, equity holders, partners, affiliates, and representatives (i) are deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation, and (ii) are deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the

Plan, and therefore are not liable and will not be liable at any time on account of such offer, issuance, and solicitation of or any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of any securities under the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 13.5 of the Plan.

**O.      Exemption from Securities Law**

65.      The Plan does not provide for the issuance of any securities by the Debtor. Thus, the Court finds that NRS 90 et seq. to be inapplicable in this case. Pursuant to NRS 90.530(7), (8), (9) and (21) exempts the Debtor from the transactions proposed in the Plan. See section 5.6 of the Amended Plan at ECF No. 60.

**P.      Rule 9019 Settlement of Claims and Controversies**

66.      The provisions of the Plan constitute a good faith compromise and settlement of all claims or controversies relating to the enforcement or termination of all contractual, legal, and equitable subordination and turnover rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made pursuant to the Plan on account of such Claim. Such settlement, as reflected in the relative distributions and recoveries of Holders of Allowed Claims under the Plan, (a) will save the Debtor and its estate the costs and expenses of prosecuting various disputes, the outcome of which likely would consume substantial resources of the Debtor's estate and require substantial time to adjudicate, and (b) has facilitated the creation and implementation of the Plan and benefits the Debtor's estate and creditors. Accordingly, such settlement is fair, equitable, and reasonable.

**Q.      Good Faith**

67.      The Proponents (and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates, and agents) have

been, are, and will continue to act in good faith as they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order.

      **R.**     **Releases and Exculpations**

      68.     Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the settlements, compromises, releases, discharges, exculpations, and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, in good faith, and in the best interests of the Debtor, the Debtor's estate, the Reorganized Debtor, and the Holders of Claims and Equity Interests. The releases of non-Debtors under the Plan and related injunctions are fair to the Holders of Claims and Equity Interests and are necessary to the proposed reorganization of the Debtor and the successful administration of its estate. The record of the Confirmation Hearing and this Chapter 11 Case is sufficient to support the releases, exculpations, and injunctions provided for in Article 5.8, 5.9 and 13.5 of the Amended Second Plan.

      **S.**     **Executory Contracts and Leases**

      69.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, the Plan provides for the rejection of each and every executory contract and unexpired lease that is listed in the Plan Schedules as being rejected, if any. The Debtor's decisions regarding the assumption and rejection of executory contracts and unexpired leases are based on and are within the sound business judgment of the Debtor, are necessary to the implementation of the Plan, and are in the best interests of the Debtor, the estate, holders of Claims, and other parties in interest in this Chapter 11 case.

      70.     As required by Section 365(b) of the Bankruptcy Code, all cure obligations associated with any executory contract or unexpired lease that is to be assumed under the Plan shall be paid.

71.     As of the Confirmation Date all executory contracts and unexpired leases of the Debtor(s) shall be assumed, pursuant to sections 365 and 1123 of the Bankruptcy Code.

72.     Upon the Confirmation Date of the Plan, the Debtor shall provide notice of the rejection pursuant to the Plan of an executory contract or unexpired lease to any non-debtor parties. In the event the Plan otherwise is not consummated, the Debtor may modify or amend (including, without limitation, making additions and/or deletions) all rights of a Debtor to assume or reject its unexpired leases and executory contracts shall be reinstated to the date immediately prior to the date of this Order.

**T.      Transfers by the Debtor; Vesting of Assets in the Reorganized Debtor**

73.     Except as otherwise expressly provided in the Amended Third Plan or this Confirmation Order, on the Effective Date, but retroactive to the Confirmation Date, without any further action, the Reorganized Debtor shall be absolutely vested with all of the property of the Estate, which is the parcel described in Exhibit A of the Amended Third Plan at ECF No. 93 and 94 and Exhibit B and commonly known as Assessor's Parcel Number 081-140-023, situated in Santa Barbara County, California, absolutely free and clear of all Claims, Liens, Prior Interest or any Interests, and free from any illegal restrictive covenants that impair the debtor's ability to develop its property, specifically the protective and restrictive covenants found in instrument numbers 94-037784, 99-021850 and 99-021851 relating to religious and cultural purposes for only people of the Chumash origin and ancestry pursuant to California Government Code § 12955 shall be stricken, removed and released from the real property records and shall not impair the debtor's property rights for development (except for (i) Liens provided or authorized pursuant to the Plan, including the Permitted Encumbrances, and (ii) Federal, State and Local zoning and building ordinances). From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as

if there were no pending case under any chapter or provision of the Bankruptcy Code, subject to the terms and conditions of the Plan and the Confirmation Order. Furthermore, if the Debtor 's management finds at any time it is in the best interest of the Debtor, its Creditors', the Estate, and Equity Interest to sell the property free and clear of all claims and interest, the Debtor may do so without further order of this Court. Based upon the Disclosure Statement filed with this Court, this Court finds that The Coastal Band of the Chumash Nation is a valid California non-profit corporation and Southern Chumash Owl Clan, is a California unincorporated association. These organizations are not federally recognized Indian tribe's.

## 1. Illegal Restrictive Covenants and Reverter

74.    Restrictive Covenants are illegal if premised on religion, origin or ancestry. See California Government Code § 12955(l), which states in relevant part,

"It shall be unlawful:

(l)  To discriminate through public or private land use practices, decisions, and authorizations because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income, or ancestry. Discrimination includes, but is not limited to, restrictive covenants, zoning laws, denials of use permits, and other actions authorized under the Planning and Zoning Law (Title 7 (commencing with Section 65000)), that make housing opportunities unavailable.

Discrimination under this subdivision also includes the existence of a restrictive covenant, regardless of whether accompanied by a statement that the restrictive covenant is repealed or void. This paragraph shall become operative on January 1, 2001."

75.    A restrictive covenant is unenforceable if it is illegal, unconstitutional, or violates public policy. See *Restatement (Third) of Real Property: Servitudes* § 3.1.

76.    Because the restrictive covenant is illegal under the California Government Code any reverter in breach of the restrictive covenant also fails. Here, the reverter was conditioned on using the property under illegal restrictive covenants for a specific group, class of people, premised on religion, ancestry and origin. These restrictions were only placed against the Coastal Band and specifically

identified the Coastal Band or Chumash peoples. As a result of the restrictive covenants being illegal, the reverter could not be enforced because the breach defined in instrument numbers 99-021850 and 99-021851 are illegal restrictive covenants that violate the California Government Code § 12955 and thus cannot be enforced. The Court finds and concludes that a resort to legislative history in this case is not appropriate unless the statute is found to be ambiguous. See *Clark v. JDI Loans*, LLC, 319 P.3d 625 at 630-631 (2014). Thus, no possibility of reverter can be found in this case. The Court finds that the restrictions and reverter are void and would impair the Debtor's ability to successfully reorganize. See 11 U.S.C § 1142.

### U.     Conditions to Effective Date

77.     Entry of this Confirmation Order shall satisfy the conditions set forth in Article 11 of the Plan.

### V.     Retention of Jurisdiction

78.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law.

### II.     ORDER

Based upon the foregoing it is hereby **ORDERED**:

### A.     Order

79.     For the reasons set forth herein, all requirements for Confirmation of the Plan have been satisfied. Accordingly, the Plan is hereby **<u>confirmed</u>** under section 1129(a) of the Bankruptcy Code. The terms of the Amended Second Plan and the exhibits to the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order. The terms of the Plan, and the

exhibits to the Plan and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Plan. A copy of the Plan is attached hereto as **Exhibit B.**

### B.    Objections

80.    To the extent that any objections, reservations of rights, statements or joinders to confirmation have not been resolved, withdrawn, waived, or settled prior to entry of the Confirmation Order or otherwise resolved or stated on the record at the Confirmation Hearing, they are hereby overruled on their merits.

### C.    Findings of Facts and Conclusions of Law

81.    The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, and the findings and conclusions of the Bankruptcy Court at the Confirmation Hearing are incorporated herein by reference. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

### D.    Plan Classification Controlling

82.    The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims entitled to vote on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtor except for voting purposes.

**E.     The Releases and Discharge**

*(i)     Discharge*

83.     IN CONJUNCTION WITH BANKRUPTCY CODE SECTION 1141, EXCEPT AS OTHERWISE PROVIDED FOR HEREIN, THE RIGHTS AFFORDED HEREIN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE AND RELEASE OF CLAIMS AND EQUITY INTERESTS OF ANY NATURE WHATSOEVER AGAINST THE DEBTOR, AND OF THE ASSETS OR PROPERTIES OF THE ESTATE, INCLUDING ANY INTEREST ACCRUED ON SUCH CLAIMS FROM AND AFTER THE PETITION DATE AND ANY PROPERTIES TRANSFERRED TO SECURED LENDERS.

84.     THE DEBTOR WILL NOT BE DISCHARGED FROM ANY DEBT EXCEPTED FROM DISCHARGE UNDER SECTION 523 OF THE BANKRUPTCY CODE, EXCEPT AS PROVIDED IN RULE 4007(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE.

85.     WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS PROVIDED IN THE CONFIRMATION ORDER, CONFIRMATION DISCHARGES THE DEBTOR AND THE REORGANIZED DEBTOR FROM ALL CLAIMS, OR OTHER DEBTS THAT AROSE BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN SECTIONS 502(G), 502(H) OR 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT: (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(A); (Y) A CLAIM BASED ON SUCH DEBT IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502 OF THE BANKRUPTCY CODE; OR (Z) THE HOLDER OF A CLAIM BASED ON SUCH DEBT HAS ACCEPTED THE PLAN.

86.     EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, (I) ON THE EFFECTIVE

DATE, ALL CLAIMS AGAINST THE DEBTOR WHICH AROSE BEFORE THE EFFECTIVE DATE SHALL BE SATISFIED, DISCHARGED AND RELEASED IN FULL, (II) ON THE EFFECTIVE DATE, THE RIGHTS AND INTERESTS OF ALL HOLDERS OF OLD EQUITY INTERESTS SHALL BE TERMINATED, CANCELED AND OF NO FORCE AND EFFECT, AND (III) ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE PROPONENTS, THE REORGANIZED DEBTOR, ANY SECURED LENDER THAT IS A TRANSFEREE OF A PROPERTY, OF THEIR SUCCESSORS, OR ANY OF THEIR ASSETS OR PROPERTIES, ANY OTHER OR FURTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE, AS WELL AS ANY DEBT OF A KIND SPECIFIED IN BANKRUPTCY CODE SECTIONS 502(G), 502(H), OR 502(I), IRRESPECTIVE OF WHETHER (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(a), (Y) SUCH CLAIM IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502, OR (Z) THE HOLDER OF THE CLAIM HAS ACCEPTED THE PLAN.

*(ii)*     ***Binding Effect of Plan***

87.     UPON THE EFFECTIVE DATE, BANKRUPTCY CODE SECTION 1141 SHALL BECOME APPLICABLE WITH RESPECT TO THE PLAN AND THE PLAN SHALL BE BINDING ON ALL PARTIES TO THE FULLEST EXTENT PERMITTED BY BANKRUPTCY CODE SECTION 1141(A). IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1141, ALL OF THE DEBTOR'S PROPERTY SHALL BE VESTED IN THE REORGANIZED DEBTOR FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS OF CREDITORS AND EQUITY INTEREST HOLDERS AND ALL PROPERTY TRANSFERRED TO SECURED LENDERS PURSUANT TO THIS PLAN SHALL BE VESTED IN THE RESPECTIVE SECURED LENDER

FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS OF CREDITORS AND EQUITY INTEREST HOLDERS.

88.    UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PERMANENTLY ENJOINED BY THE PLAN FROM (I) COMMENCING OR CONTINUING ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO COLLECT, RECOVER, OR OFFSET, DIRECTLY OR INDIRECTLY, ANY CLAIM, RIGHTS, CAUSES OF ACTION, LIABILITIES, OR INTERESTS IN OR AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN, OR VESTED IN THE REORGANIZED DEBTOR OR ANY SECURED LENDER, BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE EFFECTIVE DATE, (II) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN OTHER THAN AS PERMITTED UNDER THE PLAN, AND (III) WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ASSERTING ANY CLAIMS AGAINST THE REORGANIZED DEBTOR, ANY SECURED LENDER THAT IS A TRANSFEREE OF A PROPERTY, OR REORGANIZED DEBTOR PARENT BASED ON SUCCESSOR LIABILITY OR SIMILAR OR RELATED THEORY, EXCEPT TO THE EXTENT A PERSON OR ENTITY HOLDS AN ALLOWED CLAIM UNDER THE PLAN AND IS ENTITLED TO A DISTRIBUTION AND/OR LIEN UNDER THE PLAN IN ACCORDANCE WITH ITS TERMS, AND TO ENFORCE ITS RIGHTS TO DISTRIBUTION UNDER THE PLAN.

89.    ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF ANY CLAIM AGAINST OR INTEREST IN THE DEBTOR IS PERMANENTLY ENJOINED FROM TAKING OR PARTICIPATING IN ANY ACTION THAT WOULD INTERFERE OR OTHERWISE HINDER DEBTOR FROM IMPLEMENTING THIS PLAN, THE CONFIRMATION ORDER OR

ANY OPERATIVE DOCUMENTS IN ACCORDANCE WITH THE TERMS THEREOF.

**F.      Administrative Claims**

90.      Subject to the provisions of Bankruptcy Code sections 330(a), 331, and 503(b), each Holder of an Administrative Claim, a Professional Fee Claim, shall be paid in Cash in the Allowed amount of any such Claim on, or as soon as reasonably practicable after, the later of the Effective Date, the date upon which such Administrative Claim becomes Allowed, or such date as is otherwise agreed by the Debtor and the Holder of such claim; or (b) have such Claim assumed by the Reorganized Debtor, to be paid by the Reorganized Debtor in Cash in the Allowed Amount of any such Claim on, or as soon as reasonably practicable after, the later of the date upon which such Administrative Claim becomes Allowed, the date on which such Administrative Claim becomes due in the ordinary course of business, or such date as is otherwise agreed by the Reorganized Debtor and the Holder of such Claim.

**G.      Professional Fees and US Trustee Fees**

91.      All Professional Fee Claims shall be fully and completely satisfied solely from the DIP Loan and only may be paid by the Debtor after approval by the court. Upon receipt by all Professionals of their respective payments any and all Professional Fee Claims are hereby deemed fully satisfied, released, and discharged as to the Debtor and Reorganized Debtor when those claims are paid. In this case Professional Fee Claims outstanding are estimated at $26,213.00.

92.      Notwithstanding anything contrary in the Plan, (a) the Debtor shall pay, or cause to be paid, all accrued US Trustee Fees on or before the Effective Date of the Plan; and following the Effective Date, the Reorganized Debtor shall be responsible for timely payment of all US Trustee Fees until such time as the Final Decrees closing this Chapter 11 Case are entered and all US Trustee Fees due are paid in full, and (b) the Debtor or the Reorganized Debtor (as applicable) shall File with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter

(or portion thereof) that the Chapter 11 Case remains open in such format as reasonably may be required by the United States Trustee.

**H.      Treatment of Claims Classes 1 Through 4.**

**(i)      Treatment of Class 1**

93.      As provided in the Plan an no objections thereto:

94.      Class 1 – Claim of SMI/ISC, Corp.

95.      This Class 1 claim will consist of a Secured Claim in favor of SMI/ISC, Corp. against the Debtor's Vacant Land located in Goleta, California more commonly known as APN: 081-140-023, which will be secured by a Second Deed of Trust subordinate to the DIP Lender's Super Priority First Deed of Trust.

(a) On the Effective Date, the holder of the unsecured Note dated April 13, 2013 in favor of SMI/ISC, Corp., and in complete satisfaction of such claim shall be fully released and converted to a secured claim and subordinated second deed of trust to the Claim of the DIP Lender Golden Bear Capital.

(b) Principal Balance. The principal balance of the Class 1 claim shall be the Allowed Secured Lender Claim in the amount of $1,298,000.00.

(c) Lien. From and after the Confirmation Date, the Holder of the Class 1 Claim shall be allowed to record a subordinated second deed of trust in the Collateral consistent with the applicable Loan Documents until the Class 1 claim is repaid in full.

(d) Post-Effective Date Interest Rate. Interest shall accrue on the Class 1 Holders Claim at an interest only rate of 3.00% per annum.

(e) Monthly Payments.

(i) There shall be no monthly payments, payments shall accrue interest until paid.

(f) Maturity Date. The unpaid balance of the Class 1 claim shall be due and payable 36 months

after the Effective Date.

(g) Prepayment. There shall be no penalty for prepayment for all or part of the Class 1 claim prior to the Maturity Date.

(h) Property Taxes & Insurance. The Debtor shall be responsible for all property taxes and general liability insurance.

(i) Refinancing and Sale Options. Prior to the Maturity Date, Reorganized Debtor shall have the absolute right to act as follows:

(i) Refinance; provided, however, that the proceeds of such refinancing loan are sufficient to pay, and are utilized to pay, all sums due and owing under the Class 1 claim at the time of closing of such refinancing, unless Secured Lender otherwise agrees; or

(ii) Sell the Real Property free and clear of Secured Lender's Liens; provided, however, that the proceeds of such sale are sufficient at the time of closing of such sale to pay, and are utilized to pay, all sums due and owing under the Class 1 claim, unless Secured Lender otherwise agrees.

(j) Equity Share in Sales Profits. SMI/ISC shall be entitled to twenty percent (20%) of the sales profits from the sale of the property after all liens and expenses are deducted.

(k) Default. On the Effective Date, the Loan Documents shall remain in full force and effect as related to Default terms under the Note and Deed of Trust. Should the Debtor not be able to satisfy the above obligation to SMI/ISC the Debtor shall provide and SMI/ISC shall accept a Deed in Lieu of Foreclosure or Quiet Claim/Grant Deed in full satisfaction of its obligations to SMI/ISC.

**(ii)    Treatment of Class 2**

96.    As provided in the Plan an no objections thereto:

Class 2 Claims consist of the General Unsecured Claims against the Debtor of Global

Guidance Group, LLC.

(a) Treatment: Holders of Class 2 General Unsecured Claims on the Effective Date shall, in full satisfaction, settlement, release and exchange for such Allowed General Unsecured Claims, shall receive two payments. The first payment shall come from the DIP Loan Proceeds equal to $22,500.00. The remaining $7,500.00 shall be paid when the property sells, with interest to accrue at a rate of ten percent per annum compounding.

**(iii)    Treatment of Class 3**

97.    As provided in the Plan an no objections thereto:

98.    Class 3 will consist of Golden Bear Capital's and/or its assigns or a substitute lender 11 U.S.C. § 364(d)(1) super priority first deed of trust.

(a) Treatment. Upon Plan Confirmation Golden Bear Capital and/or its successors or assigns, or any other lender shall be authorized to lend the Debtor any amount of capital the Debtor and Lender see as necessary to complete the Project on any reasonable commercial terms that are in the Debtor's business judgment. Golden Bear Capital and/or its successors or assigns, or any other lender shall have a super-priority first deed of trust senior to any claims, interest or any other liens of any kind against the vacant land more fully described in Exhibit A below, except for taxes owed to a governmental unit, which shall be paid out of the proceeds of any loan. The recorded Amended Second Plan shall and this Confirmation Order shall operate as the Court's Order authorizing such financing and transactions.

**(iv)    Treatment of Class 4**

99.    Class 4 consist of the Equity Interest of Shaun Martin and Kote Lotah, which are the members of the Debtor.

(a) Treatment. The Equity Interest Holders of the Debtor shall not retain or receive any interest or distributions until all classes of creditors have been paid in full.

**J.    Means For Implementation of The Plan**

100.    On the Effective Date, without any further action by Debtor or Reorganized Debtor, all of Debtor's assets shall vest in Reorganized Debtor.

101.    On the Effective Date, the Membership Interest or Units shall not be cancelled and the Debtors Member(s) may sell, transfer, or assign membership units or interest as necessary.

102.    On and after the Effective Date, and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall be governed by the Existing Operating Agreement and such agreement shall supersede all other operating agreements in respect of the Debtor.

103.    On and after the Effective Date, the Debtor shall be managed as provided in the Existing Operating Agreement. Further, without limiting the generality of the foregoing, the Manager shall be entitled to receive a Management Fee and all other compensation and reimbursements described in the Operating Agreement. The entry of the Confirmation Order shall ratify and approve all actions taken by the Debtor prior to the date thereof.

104.    On the Effective Date, the Unsecured Note Claim of SMI/ISC shall be fully released and discharged. SMI/ISC shall have the secured claim described in section 4.1, Class 1.

105.    Pursuant to section 1145(a) of the Bankruptcy Code, section 5 of the Securities Act of 1933 and any state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security shall not apply to the issuance of new Membership Interests. Notwithstanding the foregoing, any new Membership Interest or Units, once issued, shall not be publically traded and may only be transferred on the terms and conditions set forth in the Operating Agreement. In addition, pursuant to section 1125(e) of the Bankruptcy Code, any Persons that solicit the acceptance or rejection of the Plan, including, the Debtor and the Manager, in good faith and in compliance with the Bankruptcy Code, or that participate, in good faith and in compliance with the applicable provisions of this title, in the offer,

issuance, sale or purchase of a security, offered or sold under the Plan, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities. Pursuant to NRS 90.530(7), (8), (9) and (21) exempts the Debtor from the transactions proposed in this Plan.

**K.    Source of Payments.**

(a) On the Effective Date payments to Creditors' in Class 2 and Administrative Claims shall be funded from the Debtor's New DIP Loan and disbursed from Escrow. The remaining amounts after disbursements shall be paid to the Debtor for its development project. All lender and title fees shall also be paid from this DIP Loan.

**L.    Miscellaneous Provisions And Plan Distributions**

106.    No Claim filed after the Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such Claims are hereby disallowed in full. After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be permitted to amend any claim to increase the claimed amount and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount.

107.    *Maintenance of Administrative Claim Status Post Discharge.* Notwithstanding any discharge granted to the Debtor, Allowed Administrative Claims shall maintain their administrative priority status under Bankruptcy Code section 507(a)(2) until paid in full.

**M.    Exemptions from Taxation**

108.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, deeds, bills of sale, or

assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp tax, real estate transfer tax, or other similar tax, and the appropriate state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. All entities responsible for maintaining real or personal property records are authorized to enter and record mortgages or deeds of trust or similar instruments securing the Class 1 and Class 2 properties without the payment of any mortgage recording, real estate transfer or similar taxes. All transactions specifically provided for by the Plan, or consummated by the Debtor and approved by the Bankruptcy Court, including, without limitation, (i) the assumptions and assignments by the Debtor of unexpired executory contracts and leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, (ii) the Plan implementation transactions contained in Article 4 and Article 7, and (iii) the settlements pursuant to Bankruptcy Rule 9019(a), shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, therefore, shall not be subject to any stamp tax, real estate transfer tax or similar tax. This Court retains jurisdiction to enforce the foregoing authorization.

### N.    Rule 9019 Settlement of Claims and Controversies

109.    The provisions of the Plan constitute a good faith compromise of all Claims or controversies relating to the contractual and legal rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such an Allowed Claim. The entry of this Confirmation Order constitutes this Court's approval of the compromise or settlement of all such Claims or controversies, and this Court's finding that such compromise or settlement is in the best interests of the Debtor, the Debtor's estate, and Holders of Claims, and is fair, equitable, and reasonable. This Court has found that the settlements embodied in the Plan will save the

Debtor and its estate the costs and expenses of prosecuting various disputes, the outcome of which likely would consume substantial resources of the Debtor's estate and require substantial time to adjudicate. This Court also has found that such settlements have facilitated the creation and implementation of the Plan and benefits the creditors of the Debtor.

        **O.**      **Vesting of Assets in the Reorganized Debtor**

      110.      Except as otherwise expressly provided in the Amended Second Plan or this Confirmation Order, on the Effective Date, but retroactive to the Confirmation Date, without any further action, the Reorganized Debtor shall be absolutely vested with all of the property of the Estate, which is the parcel described in <u>Exhibit A</u> of the Amended Second Plan at ECF No. 60 and commonly known as Assessor's Parcel Number 081-140-023, situated in Santa Barbara County, California, absolutely free and clear of all Claims, Liens, Prior Interest or any Interests, and any restrictive covenants that impair the debtor's ability to develop its property, specifically the protective and restrictive covenants found in instrument numbers 94-037784, 99-021850 and 99-021851 relating to religious and cultural purposes for only people of the Chumash origin and ancestry pursuant to California Government Code § 12955 shall be stricken, removed and released from the real property records and shall not impair the debtor's property rights for development (except for (i) Liens provided or authorized pursuant to the Plan, including the Permitted Encumbrances, and (ii) Federal, State and Local zoning and building ordinances). From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, subject to the terms and conditions of the Plan and the Confirmation Order.

### P. Preservation of Rights of Action

111.    In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

### Q. Execution by Third Parties

112.    Each and every federal, state, and local governmental agency or department is hereby directed to accept, and lessors and holders of Liens are directed to execute, any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan including, without limitation, documents and instruments for recording in county and state offices where the Reorganized Debtor Bylaws or any other agreement, document, or instrument that may be filed in order to effectuate the Plan. On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, are authorized to file UCC-3 termination statements or their equivalent in any other jurisdiction to release any liens or security interests consistent with the Plan.

### R. Binding Effect

113.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon: (a) the Debtor; (b) any and all Holders of Claims and Holders of Equity Interests (notwithstanding whether any such Holders failed to vote to accept or reject the Plan, voted to reject the Plan, or were deemed to reject the Plan); (c) all Entities that are

parties to or are subject to the settlements, compromises, discharges, and the releases and injunctions described in the Plan or herein; (d) any and all Entities acquiring property under the Plan; (e) any and all non-Debtor parties to Executory Contracts with the Debtor; (f) any Entity making an appearance in this Chapter 11 Case; and (g) any other party in interest.

114.    The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign of such Entity.

**S.      References to Plan Provisions**

115.    References to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan except as specifically provided herein. The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.

**T.      Governing Law**

116.    Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada, without giving effect to the principles of conflict of laws thereof.

**U.      Authorization to Take Acts Necessary to Implement Plan**

117.    Pursuant to section 1142(b) of the Bankruptcy Code, the Debtor and the Reorganized Debtor hereby are authorized and empowered to take such actions and to perform such acts as may be necessary, desirable, or appropriate to comply with or implement the Plan and any matters under the Plan, and all documents, instruments, and agreements related thereto, including but not limited to

those contained in the Plan Supplement, and all annexes, exhibits, and schedules appended to the Plan Supplement, and the obligations thereunder shall constitute legal, valid, binding, and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any board of directors approval. The Debtor and the Reorganized Debtor are hereby authorized and empowered to take such actions, to perform all acts, to make, execute, file, and deliver all instruments and documents, and to pay all fees and expenses as set forth in the documents relating to the Plan.

**V.    Severability**

118.    The provisions of the Plan and the Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent, except to the extent that any modification does not affect the legal or economic substance of the transactions contemplated by or the provisions of the Plan.

**X.    Effect of Conflict Between Plan and Confirmation Order**

119.    If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Order shall control.

**Y.    Effectiveness of Order**

120.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 6006(d), or any other provision of the Bankruptcy Code or the Bankruptcy Rules, this Confirmation Order shall be effective immediately upon its entry and shall not be stayed. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

**Z.    The Record**

121.    The record of the Confirmation Hearing is closed.

**AA.    Retention of Jurisdiction**

122.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction as provided in the Plan and this Confirmation Order over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including jurisdiction over those matters set forth in Article X of the Plan.

**IT IS SO ORDERED.**

Respectfully Submitted By,

**/s/ Steven L. Yarmy, Esq.**
STEVEN L. YARMY, Esq.
Nevada Bar No. 8733
Attorney for Debtor

### ALTERNATIVE METHOD re: RULE 9021:

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____    The court has waived the requirement set forth in LR 9021(b)(1).

**XXX**    No party appeared at the hearing or filed an objection to the motion.

_____    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

_____    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.